CITY OF ST. PAUL v. JOY MARIE FROYSLAND.

246 N. W. 2d 435.

September 10, 1976—No. 46235.

*James T. Hankes,* Legal Assistance of Ramsey County, and *Kathleen Morris,* Law Student, for appellant.

*Pierre N. Regnier,* City Attorney, and *Thomas R. Hughes* and *Beryl A. Nord,* Assistant City Attorneys, for respondent.

Heard before Peterson, Yetka, and Marsden, JJ., and considered and decided by the court en banc.

YETKA, JUSTICE.

Appeal from the order of the Ramsey County Municipal Court denying appellant's motion for an order directing the St. Paul Police Department to return to her all identification data obtained by them as a result of her arrest for disorderly conduct and directing that all police records relating to the charge be expunged. We affirm.

Appellant was arrested and charged August 4, 1974, with disorderly conduct, a violation of a St. Paul ordinance. On November 1, 1974, she appeared in court and entered a plea of guilty to the charge. Imposition of sentence was stayed for 6 months pursuant to Minn. St. 609.135, and appellant was told by the court:

"* * * [I]f you haven't gotten into any further trouble, I will dismiss the charge. From that time on you will be able to say you have not been convicted of this offense."

Accordingly, on May 1, 1975, the plea of guilty was stricken, the conviction vacated, and the charge dismissed. Appellant has no other criminal record.

Thereafter, appellant, relying on Minn. St. 299C.11, requested the city to return to her all identification data resulting from her arrest. She further requested that all police records of the charge be expunged. Minn. St. 299C.11[1] provides for the return

---

[1] "The sheriff of each county and the chief of police of each city of the first, second, and third classes shall furnish the bureau, upon such form as the superintendent shall prescribe, with such finger and thumb prints, photographs, and other identification data as may be requested or required by the superintendent of the bureau, which may be taken under the provisions of section 299C.10, of persons who shall be convicted of a felony, gross misdemeanor, or who shall be found to have been convicted of a felony or gross misdemeanor, within ten years next preceding their arrest. Upon the determination of all pending criminal

of certain identification data, obtained pursuant to § 299C.10,[2] "[u]pon the determination of all pending criminal actions or proceedings in favor of the arrested person * * *." That request was denied. Appellant then moved the Ramsey County Municipal Court to order the police department to grant her request.

Appellant's motion was heard July 30, 1975. In denying the motion, the court ruled that a dismissal following the successful completion of a probationary period during a stay of imposition of sentence is not a "determination * * * in favor of the accused." The court, in its memorandum opinion, reasoned:

"A person accused of an offense may plead guilty or not guilty. This defendant had these options. She chose to plead guilty. By that plea she necessarily admitted that she had committed the offense of disorderly conduct. While the court stayed imposition of sentence, the dismissal of the charge following the period

actions or proceedings in favor of the arrested person, he shall, upon demand, have all such finger and thumb prints, photographs, and other identification data, and all copies and duplicates thereof, returned to him, provided it is not established that he has been convicted of any felony, either within or without the state, within the period of ten years immediately preceding such determination."

[2] "It is hereby made the duty of the sheriffs of the respective counties and of the police officers in cities of the first, second, and third classes, under the direction of the chiefs of police in such cities, to take or cause to be taken immediately finger and thumb prints, photographs, and such other identification data as may be requested or required by the superintendent of the bureau; of all persons arrested for a felony, gross misdemeanor, of all juveniles committing felonies as distinguished from those committed by adult offenders, of all persons reasonably believed by the arresting officer to be fugitives from justice, of all persons in whose possession, when arrested, are found concealed firearms or other dangerous weapons, burglar tools or outfits, high-power explosives, or articles, machines, or appliances useable for an unlawful purpose and reasonably believed by the arresting officer to be intended for such purposes, and within 24 hours thereafter to forward such fingerprint records and other identification data on such forms and in such manner as may be prescribed by the superintendent of the bureau of criminal apprehension."

of stayed imposition of sentence is in the nature of a pardon, not a declaration of innocence. Had defendant wished to assert her innocence, she could have gone to trial. * * *

"The policy underlying Minn. Stat. 299C.11 is to protect persons who have been charged with an offense and either acquitted or released without further proceedings from having their photographs and fingerprints in police custody and available for display. The statute does not extend its protection to those who have admitted their guilt. It may or may not be sound social policy to extend the same protection to persons in the class of this defendant. However, in the absence of a Constitutional or statutory mandate, the courts ought not intrude into the record-keeping functions of the executive branch."

Although the statutes referred to in this case deal only with felonies and gross misdemeanors, appellant does not raise the issue on appeal as to whether, in absence of statute, law enforcement officials may photograph and fingerprint a defendant charged with a misdemeanor. Thus, only two issues are raised on appeal: The first, procedural in nature, is whether the municipal court has jurisdiction to consider the issue relating to the return of identification data after the termination of a criminal case. The second issue is whether the appellant was entitled to the return of the identification data requested, and to expungement of all other records of the charge.

■ The trial court ruled that appellant's motion was "pendent and appurtenant" to the main criminal proceeding, over which it had jurisdiction, and that therefore the court had jurisdiction to consider the motion. Respondent takes the position that at the time of the motion, following the dismissal of the charges, there was no "pending" criminal action to which the motion was "pendent or appurtenant," and that the relief sought is equitable in nature and is therefore not within the jurisdiction of the Ramsey County Municipal Court. Minn. St. 488A.18, subd. 8(a) (excepting actions where the relief sought is purely equitable).

The trial court's decision is supported by Morrow v. District

of Columbia, 135 App. D. C. 160, 417 F. 2d 728 (1969). In that case, the jurisdiction of the District of Columbia Court of General Sessions to issue an order prohibiting the dissemination of the arrest records of a defendant whose criminal case was dismissed at trial was challenged. Conceding that the Court of General Sessions would not have *original* subject-matter jurisdiction, the Court of Appeals for the District of Columbia Circuit nevertheless recognized that the issue of dissemination of arrest records was ancillary to the criminal proceeding since allowing the Court of General Sessions to decide the question would facilitate that court in accomplishing "complete justice." 135 App. D. C. 170, 417 F. 2d 738.[3] The rationale behind the decision in that respect is sound and will therefore be adopted in Minnesota.

■ The expungement of arrest records, or court-imposed restrictions on their use, has been the frequent, albeit not wholly consistent, subject of judicial decision. See, Annotation, 46 A. L. R. 3d 900. A succinct but comprehensive review of those decisions appears in Davidson v. Dill, 180 Colo. 123, 129, 503 P. 2d 157, 160 (1972) :

"In considering the problem at hand, we find that the case law reflects a concern for the harm caused by arrest records, although an analysis reveals that, at best, courts are in conflict over the proper use of arrest records and what role, if, any, the judiciary should play.

"Until recently, most courts summarily denied litigants' pleas to secure the return of their arrest records upon acquittal or dismissal of charges against them. They reasoned that the needs of effective law enforcement outweigh any harm to the individual and that the legislature, not the courts, should determine the proper use of arrest records. *Herschel v. Dyra,* 365 F. 2d 17 (7th Cir. 1966) ; *Spock v. District of Columbia,* 283 A. 2d 14 (D. C. Ct. App. 1971); *Sterling v. City of Oakland,* 208 Cal. App.

---

[3] See, also, United States v. Dooley, 364 F. Supp. 75, 76, Note 1 (E. D. Pa. 1973) (motion to expunge criminal arrest records held to come within court's ancillary jurisdiction).

2d 1, 24 Cal. Rptr. 696; *Mulkey v. Purdy,* 234 So. 2d 108 (Fla.); *Kolb v. O'Connor,* 14 Ill. App. 2d 81, 142 N. E. 2d 818; *Weisberg v. Village,* 46 Misc. 2d 846, 260 N. Y. S. 2d 554.

"Cases granting petitioners' request for expungement or return of their arrest records fall into several categories. The oldest of these cases granted relief only if petitioner could point to improper dissemination of his records, such as their release to newspapermen or their placement in a 'rogue's gallery' after his acquittal. *See Itzkovitch v. Whitaker,* 115 La. 479, 39 So. 499; *Schulman v. Whitaker,* 117 La. 704, 42 So. 227; and *Reed v. Harris,* 348 Mo. 426, 153 S. W. 2d 834.

"A second group of cases of more recent origin has ordered the expungement of arrest records where, due to the impropriety of the original arrest, the records serve no legitimate police function. *Menard v. Mitchell,* 430 F. 2d 486 (D. C. Cir. 1970); *United States v. Mcleod,* 385 F. 2d 734 (5th Cir. 1967); *Gomez v. Wilson,* 323 F. Supp. 87; *Wheeler v. Goodman,* 306 F. Supp. 58; *Hughes v. Rizzo,* 282 F. Supp. 881.

"A final group of cases, which we consider to be persuasive and which lead to the result we here reach, has held that a court should expunge an arrest record or order its return when the harm to the individual's right of privacy or dangers of unwarranted adverse consequences outweigh the public interest in retaining the records in police files. *United States v. Kalish,* 271 F. Supp. 968; *Kowall v. United States,* 53 F. R. D. 211; *Eddy v. Moore,* 5 Wash. App. 334, 487 P. 2d 211."

The applicability and persuasiveness of the "final group of cases" cited above is substantially if not completely diminished by the material dissimilarity of the facts in those cases vis-a-vis the instant case. In Kalish, the charge against the defendant was never prosecuted. In Kowall, the defendant's sentence was vacated, his conviction set aside, and the indictment under which he was prosecuted was quashed. In Eddy, the charges against the defendant were dismissed at trial. In addition, it appears that none of these defendants pleaded guilty to the charge or charges

against them. In the instant case, appellant was convicted pursuant to her plea of guilty[4] to the charge of disorderly conduct. It was only through action subsequent to conviction that the charge was dismissed and the plea and conviction vacated.

The trial court recognized what seems to be the critical distinction between the above cases and the one at bar when it stated that "the dismissal of the charge following the period of stayed imposition of sentence is in the nature of a pardon, not a declaration of innocence." In Cohen v. Barger, 11 Pa. Commonwealth Ct. 617, 314 A. 2d 353 (1974), the defendant, whose conviction was entered upon a plea of guilty, had successfully completed a 3-year probation period and subsequently received a pardon from the governor. In denying the expungement of his arrest records, the court observed that while pardons restore a defendant to the status held by him prior to conviction, they do not alter the *fact* of conviction, a "solemn" record of the courts. The court observed that had the pardon been granted for subsequently discovered innocence, "perhaps a different result would obtain." 11 Pa. Commonwealth Ct. 620, 314 A. 2d 354.

Appellant relies chiefly on Eddy v. Moore, 5 Wash. App. 334, 487 P. 2d 211 (1971). Assuming arguendo that the principles espoused in Eddy are applicable to the instant case, nevertheless, the rationale of that case suggests affirmance of the trial court's decision here. Eddy concludes that the retention and dissemination of arrest records may violate an individual's constitutional right of privacy unless the state can justify their retention and dissemination.

"We do not mean to hold that the right of privacy an acquitted person has in his fingerprints and photographs is an absolute and complete bar to their retention. The value of fingerprints and photographs of an arrested person depends upon two factors: An assumption the individual arrested did in fact commit the crime for which he is accused and that his commission of this

---

[4] See, Minn. St. 609.02, subd. 5.

crime indicates a likelihood that other crimes will be committed. An acquittal seems to negate both premises. Where the only reason for the presence of an individual's fingerprints and photographs in the police file is based upon an arrest which has subsequently been voided by an acquittal and no further justification is made for the retention of these fingerprints and photographs, no rational basis for their retention remains." 5 Wash. App. 344, 487 P. 2d 217.

The assumption of a defendant's innocence, which would ordinarily be concluded from acquittal or dismissal of charges, does not result when, as in the case at bar, the guilt of a crime is admitted. Moreover, the prosecutors and courts have important and legitimate interest in ascertaining whether a defendant is, in a sense, a multiple offender, the prior charge having been dismissed under circumstances tantamount to a pardon. This is vital information relating to a defendant's proclivity for recidivism and is often the critical factor in determining whether to prosecute the arrested or whether to afford the convicted favorable sentencing treatment.

Assuming the applicability of Minn. St. 299C.11 to misdemeanants,[5] the trial court's judgment that the statute was not

---

[5] That provision only applies by its express terms to felonies and gross misdemeanors. However, as the trial court ruled, logic seems to dictate that the apparent legislative policies underlying the statute extend to less serious crimes and criminals, i. e., misdemeanors. Moreover, frequently a misdemeanor conviction is a result of a plea bargain where the defendant was originally charged with a felony but allowed to plead to a lesser offense. It should also be noted that Minn. St. 299C.11 is directed only to the return of identification data and not all records relating to arrest. Moreover, the following section, 299C.12, seems to indicate that certain records relating to felonies should be permanently maintained. Minn. St. 299C.12 states: "Every peace officer shall keep or cause to be kept a permanent written record, in such form as the superintendent may prescribe, of all felonies reported to or discovered by him within his jurisdiction and of all warrants of arrest for felonies and search warrants issued to him in relation to the commission of

intended to protect those whose conviction was entered upon a plea of guilty seems reasonable and sound. Therefore, we hold that a dismissal of charges following a stay of imposition of sentence is not a determination in favor of the accused within the meaning of Minn. St. 299C.11.[6]

Affirmed.

---

felonies, and shall make or cause to be made to the sheriff of the county and the bureau reports of all such crimes, upon such forms as the superintendent may prescribe, including a statement of the facts and a description of the offender, so far as known, the offender's method of operation, the action taken by the officer, and such other information as the superintendent may require."

[6] This opinion has no application to the various pretrial diversionary projects in operation in several counties in Minnesota generally approved by the American Bar Association Commission on Correctional Facilities and Services.