256 N.W.2d 803 (1977)
In re Petition of R. L. F. for Expungement of Certain Records.
STATE of Minnesota, Appellant,
v.
R. L. F., Respondent.
STATE of Minnesota, Appellant,
v.
R. D. K., Respondent.
STATE of Minnesota, Appellant,
v.
G. E. S., Respondent.
Nos. 46700, 46664, 46699.
Supreme Court of Minnesota.
May 13, 1977.
Rehearing Denied August 30, 1977.
*804 Warren Spannaus, Atty. Gen., St. Paul, Gary W. Flakne, County Atty., Vernon E. Bergstrom, Phebe S. Haugen, David W. Larson and Lee Barry, Asst. County Attys., Minneapolis, for appellant.
Frank H. Voigt, Hennepin County Legal Advice Clinics, Ltd., Minneapolis, for R. L. F.
Thomson Wylde Nordby Blethen & Peterson and Mark W. Peterson, St. Paul, for R. D. K.
C. Paul Jones, Public Defender, Mollie G. Raskind, Asst. Public Defender, Minneapolis, for G. E. S.
Heard before PETERSON, MacLAUGHLIN, and SCOTT, JJ., and considered and decided by the court en banc.
SCOTT, Justice.
This is a consolidation of appeals by the state, each of which involves a district court order for the expungement of certain criminal records. In the case of R. D. K., the district court granted the state's motion to dismiss criminal charges and ordered respondent's arrest record expunged and all identification data returned to him. In the G. E. S. case, the district court ordered expungement of respondent's record and return to him of all identification data. In the case of R. L. F., the district court set aside respondent's conviction and ordered his arrest records expunged. The state filed a notice of appeal for each expungement order entered.

R. D. K.
On March 21, 1974, R. D. K., 28 years of age, had his residence searched pursuant to a warrant, revealing several bags of marijuana. He was charged the following day with unlawful possession of a Schedule I controlled substance in violation of Minn.St. 152.09, subd. 1(2), a felony. In district *805 court, a motion to suppress the evidence against him at the Rasmussen hearing was granted and the state moved for dismissal of the charges. R. D. K. then moved for the expungement of his arrest record and return of identification data and the district court subsequently issued the requested order.
The issue involved in all three cases is whether the court has the authority to issue such an order under each of the factual settings. The state, in effect, in all three cases denies that the court has the authority either statutorily or inherently to grant such relief. The respondent points to Minn.St. 299C.11 pertaining to the Bureau of Criminal Apprehension which reads as follows:
"The sheriff of each county and the chief of police of each city of the first, second, and third classes shall furnish the bureau, upon such form as the superintendent shall prescribe, with such finger and thumb prints, photographs, and other identification data as may be requested or required by the superintendent of the bureau, which may be taken under the provisions of section 299C.10, of persons who shall be convicted of a felony, gross misdemeanor, or who shall be found to have been convicted of a felony or gross misdemeanor, within ten years next preceding their arrest. Upon the determination of all pending criminal actions or proceedings in favor of the arrested person, he shall, upon demand, have all such finger and thumb prints, photographs, and other identification data, and all copies and duplicates thereof, returned to him, provided it is not established that he has been convicted of any felony, either within or without the state, within the period of ten years immediately preceding such determination." (Italics supplied.)
The respondent argues that this statute and related provisions in the same chapter are clearly applicable to all entities which gather this information for the BCA by pointing out that the statute provides the return of "all such" fingerprints, photographs, and other identification data and states that this construction of the statute makes both practical and forensic sense. We must, without the necessity of distinguishing our statutory scheme from that of other states relied upon by the state, agree with respondent. We hold that such a statute implicitly includes the arrest records.
We therefore need not reach the question of the inherent power of the court or the right to privacy issues, but the fairness and necessity of the conclusions reached above are further supported by the legislative thrust of Minn.St. 152.18 whereby, upon a plea of guilty or a finding of guilty under a like charge and appropriate reference of the defendant to an educational program, the court may dismiss the charges and
"Subd. 2. Upon the dismissal of such person and discharge of the proceedings against him pursuant to subdivision 1, such person may apply to the district court in which the trial was had for an order to expunge from all official records, other than the nonpublic record retained by the department of public safety pursuant to subdivision 1, all recordation relating to arrest, indictment or information, trial and dismissal and discharge pursuant to subdivision 1. If the court determines, after hearing, that such person was discharged and the proceedings against him dismissed, it shall enter such order. The effect of the order shall be to restore the person, in the contemplation of the law, to the status he occupied before such arrest or indictment or information. No person as to whom such an order has been entered shall be held thereafter under any provision of any law to be guilty of perjury or otherwise giving a false statement by reason of his failure to recite or acknowledge such arrest, or indictment or information, or trial in response to any inquiry made for him for any purpose." (Italics supplied.)
This information is not confidential or private under the so-called Minnesota Data Privacy Act, Minn.St. 15.162 to 15.1671. Surely in the case at hand of R. D. K., wherein a conviction was never even *806 obtained, we must conclude that Minn.St. 299C.11 clearly was intended to wipe his slate clean.

G. E. S.
G. E. S. was charged with using an automobile without the permission of the owner under Minn.St.1961, § 168.49, a felony, and pled guilty on August 1, 1961, while still a minor. He was given probation, and his probation was revoked. He served 16 months in St. Cloud Reformatory and received an order of discharge and restoration of his civil rights in 1964. Such order was filed with the district court. He has no further criminal record.
The statute relied upon by respondent in opposition to appellant's claim that the court lacks the authority to expunge the record is Minn.St. 242.31, which reads as follows:
"Whenever a person committed to the board upon conviction of a crime is discharged from its control other than by expiration of the maximum term of commitment as provided in this chapter, or by termination of its control under the provisions of section 242.27, such discharge shall, when so ordered by the board, restore such person to all civil rights and shall have the effect of setting aside the conviction and nullifying the same and of purging such person thereof. The board shall file a copy of the order with the district court of the county in which the conviction occurred, whereupon the court shall order the conviction set aside.
"Whenever a person has been placed on probation by the court pursuant to section 242.13 and, after satisfactory fulfillment thereof, is discharged therefrom, the court, on application of the defendant or on its own motion and after notice to the county attorney, in its discretion may likewise so order.
"Such orders restore the defendant to his civil rights and purge and free him from all penalties and disabilities arising from such conviction and it shall not thereafter be used against him, except in a criminal prosecution for a subsequent offense if otherwise admissible therein." (Italics supplied.)
The respondent points out, and we would have to agree, that the purpose of the statutes in this field dealing with youthful offenders was to minimize or eliminate any adverse consequences when there is only one conviction on an otherwise clean record. He points out that it has been 12 years since the order of discharge and restoration of civil rights and that he has committed no other offense, which would clearly indicate no likelihood of recidivism. He concedes generally that while retention of arrest and identification records is valuable to law enforcement for many reasons in dealing with the criminal element, there seems to be no such interest in retaining respondent's records when there has been total rehabilitation. Respondent further points out that a balancing test must be used in such cases, and cites Kowall v. United States, 53 F.R.D. 211 (W.D.Mich.1971), and Paton v. LaProde, 524 F.2d 862, 868 (3 Cir. 1975), wherein the court stated:
"* * * Determination of the propriety of an order directing expungement involves a balancing of interests; the harm caused to an individual by the existence of any records must be weighed against the utility to the Government of their maintenance."
The appellant argues that in this case there is no actual statutory authority for expungement and the benefit of retention of criminal records to the community as a whole outweighs any invasion of a convicted criminal's privacy. We must disagree, and on statutory grounds. Section 242.31, quoted above, uses the words and phrase "purge and free him from all penalties and disabilities arising from such conviction and it shall not thereafter be used against him * * *." It seems clear that the legislature is allowing for expungement in this statute also, as in Minn.St. 299C.11.

R. L. F.
R. L. F. was arrested in 1967 on a charge of tampering with an automobile, a misdemeanor. He pled guilty to the offense, was sentenced to 90 days in the Hennepin *807 County Workhouse, and was released after serving only part of his sentence. He then served 6 years in the Air Force Reserve, and was honorably discharged in 1973. In applying for expungement, he stated that he wished to apply for full-time work with the Bloomington Police Department but his arrest record will be detrimental to his chance for such employment. The court set aside the 1967 conviction and ordered his arrest record expunged.
In this case, as distinguished from the other two incorporated in this trilogy of appeals, we have no statutory authority to guide us in determining whether the court had the power to expunge the records. The respondent therefore bases his request that we uphold the district court on its inherent power to order the expungement of arrest records and identification data when a state agency fails to demonstrate a significant public interest supporting retention of respondent's records. He relies heavily upon Kowall v. United States, supra, wherein the court discussed at some length whether expungement should be granted as a matter of public policy in cases such as this. There is further reliance upon Eddy v. Moore, 5 Wash.App. 334, 487 P.2d 211 (1971), wherein the court held that a writ of mandamus should issue directing that the petitioner's fingerprints and photographs taken at the time of her arrest be returned to her upon dismissal of the charges for which she was arrested.
The question of the inherent power of the court to order expungement of criminal records has received considerable attention in recent major cases from other jurisdictions and is also covered in a 1971 Annotation, 46 A.L.R.3d 900. The three cases are Doe v. Commander, Wheaton Police Department, 273 Md. 262, 329 A.2d 35 (1974); Bradford v. Mahan, 219 Kan. 450, 548 P.2d 1223 (1976), and Menard v. Saxbe, 162 App.D.C. 284, 498 F.2d 1017 (1974).
Doe contains the most complete analysis of the extent of the court's inherent power in this area. In that case a petition was filed to expunge arrest records after the state had entered a nolle prosequi. The Maryland Court of Appeals held that a court of equity had subject matter jurisdiction to entertain the petition, which had alleged an infringement of the constitutional right of privacy by reason of the retention of the arrest record. The court first classified the cases from other jurisdictions on this issue into four groups: (1) Those holding that the problem is for the legislature; (2) those that would deny expungement but restrict dissemination of arrest records; (3) those that would permit expungement in "extreme circumstances," e. g., arrests without probable cause or police misconduct; (4) those holding that without regard to legislative action or special circumstances, expungement may be ordered. 273 Md. 267, 329 A.2d 39. The court then proceeded to review two of the cases in the last category, Eddy v. Moore, supra, and Davidson v. Dill, 180 Colo. 123, 503 P.2d 157 (1972), both of which rely heavily on the Supreme Court's seminal privacy decisions, Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), and Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). The court concluded that an equity court had jurisdiction to hear and decide an expungement petition:
"* * * It is clear that a court of equity has jurisdiction over issues involving the maintenance of civil rights * * * and at least in some matters involving consideration of personal rights, e. g., rights protected by the federal or state constitutions. * * * [W]here constitutional questions are involved, the litigant has the right to raise them in a court of equity, and such court has the right to consider them." 273 Md. 274, 329 A.2d 42.
The court did note that "the exercise of power by a court of equity in matters involving constitutional questions is not favored where statutory remedies exist which permit the raising of such questions," but pointed out that as yet the Maryland legislature had provided for expungement of arrest records only in drug-related cases. 273 Md. 275, 329 A.2d 43. In Loder v. Municipal Court, 17 Cal.3d 859, 132 Cal. Rptr. 464, 553 P.2d 624 (1976), the California Supreme Court held that expungement would not be granted where the state legislature had provided an extensive body of legislation controlling this question. 17 Cal.3d 876, 132 Cal.Rptr. 476, 553 P.2d 636.
A majority of jurisdictions deciding this issue hold that it is within the inherent *808 power of the court to order expungement of criminal records. We join the majority, but only to the following extent: In all cases where statutes so provide, the court is clearly empowered to order expungement; in cases to which our statutory scheme does not extend, the court's inherent power is limited to instances where the petitioner's constitutional rights may be seriously infringed by retention of his records. It has not been demonstrated that such serious infringement will result in the case of R. L. F. Absent statutory authority, then, we must reverse the expungement order in his case.
Affirmed as to R. D. K. and G. E. S., and reversed as to R. L. F.