STATE of Minnesota, petitioner,
Appellant,

v.

Ammanuel AMBAYE, Respondent.

No. C9–98–2221.

Supreme Court of Minnesota.

June 29, 2000.

Michael Hatch, Minnesota Attorney General, St. Paul, Amy Klobuchar, Hennepin County Attorney, Beverly J. Benson, Assistant County Attorney, Minneapolis, for appellant.

Maureen Williams, Law Office of Maureen Williams, Minneapolis, for respondent.

## OPINION

BLATZ, Chief Justice.

This case began with respondent's petition for the expungement of his criminal record. The district court concluded that respondent was not entitled to expungement under either the expungement statute or the court's inherent power to expunge. The Minnesota Court of Appeals reversed and remanded for the entry of an expungement order under the expungement statute. We hold that a verdict of not guilty by reason of insanity does not satisfy the legal threshold that would entitle a petitioner to a presumption of expungement under the statute. Accordingly, we reverse the court of appeals. We also affirm the district court's refusal to grant respondent an expungement order under that court's inherent power.

Respondent Ammanuel Ambaye was indicted in 1973 for the first-degree murder of his roommate. The jury found him not guilty by reason of insanity.[1] Following the jury verdict, respondent was civilly committed to the Minnesota Security Hospital, and subsequently transferred to the St. Peter State Hospital in St. Peter, Minnesota. In total, respondent was committed for approximately five years. After being provisionally discharged from the hospital, respondent moved to Mankato, where he lived in a halfway house and studied for and received a master's of science in criminal justice.

In May 1998, respondent petitioned the district court to expunge the records of his first-degree murder indictment and prosecution. He stated then, and still maintains, that he has lost several social work positions, has been denied an apartment lease, and has been removed from direct client contact several times due to his criminal record.

There are two legal bases that provide for the expungement of criminal records: Minn.Stat. ch. 609A (the expungement statute) and a court's inherent expungement power. *See generally State v. C.A.,* 304 N.W.2d 353, 358 (Minn.1981); *In re R.L.F.,* 256 N.W.2d 803, 807–08 (Minn. 1977). The Minnesota expungement statute allows for the expungement of criminal records in certain circumstances. *See* Minn.Stat. § 609A.02 (1998). Relevant to this case is the statute's recognition of a petition for expungement if all pending actions and proceedings were "resolved in favor of the petitioner." Minn.Stat. § 609A.02, subd. 3 (1998). The statute specifically states that if the actions and proceedings were resolved "in favor of the petitioner," he or she is presumptively entitled to expungement "unless the agency or jurisdiction whose records would be af-

---

1. Respondent pleaded not guilty, and was subsequently found "not guilty by reason of insanity" as stated on the verdict form returned by the jury. Nonetheless, we note that in 1971, the criminal responsibility statute was amended, and the phrase "mentally ill or mentally deficient" was inserted in place of "a state of idiocy, imbecility, lunacy, or insanity." *See* Act of May 17, 1971, ch. 352 § 1, 1971 Minn. Laws 602, 602. In addition, when the Rules of Criminal Procedure were promulgated in 1975, this statutory amendment was recognized and Minn. R.Crim. P. 14.01 for the first time provided a plea of not guilty by reason of mental illness or mental deficiency. *See* Minn. R.Crim. P. 14.01 & Cmt. (1998).

fected establishes by clear and convincing evidence that the interests of the public and public safety outweigh the disadvantages to the petitioner of not sealing the record." Minn.Stat. §§ 609A.02, subd. 3; 609A.03, subd. 5(b) (1998).

■ In addition to statutory expungement under chapter 609A, Minnesota courts also have the inherent power to expunge criminal records in two situations. First, courts may use their inherent expungement power "where the petitioner's constitutional rights may be seriously infringed by retention of his records." *R.L.F.*, 256 N.W.2d at 807–08. Second, when a petitioner's constitutional rights are not involved, "the court must decide whether expungement will yield a benefit to the petitioner commensurate with the disadvantages to the public from the elimination of the record and the burden on the court in issuing, enforcing and monitoring an expungement order." *C.A.*, 304 N.W.2d at 358.

In the instant case, the district court concluded that respondent's not guilty by reason of insanity verdict was not a determination "in favor of" respondent, and thus he was not entitled to a presumption of expungement under chapter 609A. In addition, the district court declined to use its inherent authority to grant the petition because it concluded that the benefits respondent might gain through expungement were not as great as the detriments to the public that might result from the same. The court of appeals reversed, holding that respondent's verdict was a determination in favor of him. *See State v. Ambaye*, 596 N.W.2d 668, 670 (Minn.App.1999). Unlike the district court, the court of appeals also performed the statutory balancing test provided in section 609A.03, subd. 5(b), and concluded that respondent is entitled to expungement. *See Ambaye*, 596 N.W.2d at 670–71. Having decided that respondent was entitled to expungement under the expungement statute, the court of appeals did not reach the question of whether respondent was also entitled to

expungement under the court's inherent power. *See id.* at 671.

## I.

■ This case presents the question of whether a jury verdict of not guilty by reason of insanity is a resolution "in favor of" respondent for purposes of the expungement statute. The proper construction of a statute is a question of law that we review de novo. *See State v. Ronquist*, 600 N.W.2d 444, 447 (Minn.1999). Section 609A.02, subd. 3 contains a legal threshold that must be met before a petitioner can have his need for expungement weighed against "the interests of the public and public safety." Minn.Stat. § 609A.03, subd. 5(b). "A petition may be filed under section 609A.03 to seal all records relating to an arrest, indictment or information, trial, or verdict * * * if all pending actions or proceedings were resolved *in favor of the petitioner.*" Minn.Stat. § 609A.02, subd. 3 (emphasis added). Once this requirement is met, the petitioner has a presumption of expungement that can be overcome only by clear and convincing evidence that the public's interest in having the criminal records available outweighs the petitioner's interest in expungement. *See* Minn.Stat. § 609A.03, subd. 5(b).

Construction of the expungement statute is a matter of first impression. However, this court has decided cases under another statute, Minn.Stat. § 299C.11 (1980), which contained nearly identical "in favor of" language. *See State v. M.C.*, 304 N.W.2d 362, 364 (Minn.1981); *C.A.*, 304 N.W.2d at 357 n. 3; *City of St. Paul v. Froysland*, 310 Minn. 268, 272–76 246 N.W.2d 435, 437–39 (1976). Minnesota Statutes § 299C.11 (1980) did not provide for the expungement of criminal records, but did permit one to demand the return of all identification data such as fingerprints and photographs, "[u]pon the determination of all pending criminal actions or proceedings *in favor of the arrested person.*" Minn.Stat. § 299C.11 (1980) (em-

phasis added).[2] Therefore, a brief discussion of the cases involving section 299C.11 is instructive in understanding the statutory language set forth in section 609A.02, subd. 3.

In *City of St. Paul v. Froysland*, the first case construing section 299C.11's "in favor of" language, this court held that a dismissal of charges following a stay of imposition of sentence is not a determination "in favor of" the accused. *See Froysland*, 310 Minn. at 276, 246 N.W.2d at 439. In that case, a defendant convicted of a misdemeanor following a guilty plea was told by the district court judge that if she committed no offenses for six months the conviction would be vacated and the charges dismissed. *See id.* at 274, 246 N.W.2d at 438. In *Froysland*, this court reasoned that "in favor of" under section 299C.11(b) could not encompass a disposition in which the defendant pleaded guilty, even if the charges were later dismissed. *Id.* at 275, 246 N.W.2d at 439.

Two other cases construing the statutory language of section 299C.11 serve to further define the scope of "in favor of." In *State v. M.C.*, the appellant was found not guilty of two counts of first-degree murder. 304 N.W.2d at 363. We concluded that a verdict of not guilty was a determination in favor of the appellant. *See id.* at 364. The second case, *State v. C.A.*, presented the question whether a conviction for consensual sodomy which was set aside by this court was a resolution "in favor of" appellant. 304 N.W.2d at 355. The conviction was set aside pursuant to a stipulation between the state and the defense, the charges were dropped, and appellant was never subsequently retried. *See id.* at 357 n. 3. We concluded that a voluntary dismissal of charges was a determination "in favor of" an appellant. *See id.* Therefore, the scope of "in favor of" under section 299C.11 includes verdicts of

not guilty and voluntary dismissals, and does not include resolutions where the defendant pleaded guilty.

Here, in concluding that a jury verdict of not guilty by reason of insanity is not a determination "in favor of" respondent, the district court relied on a decision of the Pennsylvania Superior Court, *Commonwealth v. W.P.*, 417 Pa.Super. 192, 612 A.2d 438 (1992). In *W.P.*, the question was whether a person found not guilty by reason of insanity was entitled to expungement under the court's inherent expungement power. *See id.* at 440. The court of appeals correctly determined that the district court's reliance on *W.P.* was misplaced as the Pennsylvania Superior Court was not construing a statute but rather addressing expunction as a judicial remedy. *See Ambaye*, 596 N.W.2d at 670.

In contrast to the district court, the court of appeals analyzed the verdict of not guilty by reason of insanity within a double jeopardy framework, concluding that the verdict is a determination "in favor of" respondent. *See id.* at 670. The court of appeals reasoned that because a verdict of not guilty by reason of insanity arguably prevents the state from retrying a defendant for the same crime, the verdict "at least approaches the status of an acquittal for double jeopardy purposes." *Id.* This reasoning is unpersuasive, however, as a verdict of guilty gives a defendant the same protection—i.e., it bars retrial—and yet could not be considered a determination "in favor of" a defendant.

■ We conclude that the correct and applicable construction of the "in favor of" language is that a verdict of not guilty by reason of insanity is not a resolution "in favor of" a petitioner within the meaning of the section 609A.02, subd. 3. This conclusion is consistent with and is guided by our reasoning in *Froysland, M.C.* and *C.A.* While a verdict of not guilty by reason of

---

**2.** While retaining the "in favor of" language, the statute has been amended to include two additional conditions that must be met before the identification data must be returned, and to require that the records of a person who has had his 609A petition granted be sealed. *See* Act of Apr. 2, 1996, ch. 408, art. 9, § 5, 1996 Minn. Laws 605, 697.

insanity can be distinguished from a verdict of guilty, it is not the equivalent of a verdict of not guilty. *See State v. Bouwman*, 328 N.W.2d 703, 705 (Minn.1982) ("There is a distinction, which society understands and accepts, between a verdict of 'not guilty' and a verdict of 'not guilty by reason of insanity.'"). At the conclusion of respondent's trial, the jury reached

3. To successfully establish the insanity defense, respondent had to rebut the statutory presumption of responsibility for his actions. *See* Minn.Stat. § 611.025 (1998). To rebut this presumption, respondent had to prove that at the time of his criminal act he "was laboring under such a defect of reason * * * as not to know the nature of his act, or that it was wrong." Minn.Stat. § 611.026; *see also State v. Rawland*, 294 Minn. 17, 46, 199 N.W.2d 774, 790 (1972).

4. The special concurrence states that the majority is incorrect in asserting that respondent's verdict evidences that the state proved all elements of its case. Citing *State v. Schreiber*, 558 N.W.2d 474, 477 (Minn.1997), and *State v. Hoffman*, 328 N.W.2d 709, 716–17 (Minn.1982), the concurrence states that, presently, a defendant who pleads not guilty by reason of mental illness or mental deficiency receives a bifurcated trial. *See generally* Minn. R.Crim. P. 20.02, subd. 6(2). The first phase of the trial determines whether the state has met its burden of proof as to the defendant's guilt; that is, whether the state has proven all elements of the crime beyond a reasonable doubt. *See* Minn. R.Crim. P. 20.02, subd. 6(4)(b). If the state carries its burden and the defendant is found guilty, the trial moves to its second phase to determine whether the defendant has established the defense of mental illness. *See id.*

However, the bifurcated trial referred to by the concurrence is mandated upon a defendant's plea of *both* not guilty and not guilty by reason of mental illness or deficiency. *See* Minn. R.Crim. P. 20.02, subd. 6(2). Such a double plea was the situation in *Schreiber*. 558 N.W.2d at 475. In contrast, where a defendant enters only a plea of not guilty by reason of mental illness or deficiency, the trial is not bifurcated. *See* Minn. R.Crim. P. 20.02, subd. 6(1). Moreover, unlike the situation in *Schreiber*, in a case where only not guilty by reason of mental illness or deficiency is pleaded, psychological evidence from the defendant's mental examinations *is* admissible in the defendant's case-in-chief. *See* Minn. R.Crim. P. 20.02, subd. 6(1).

a verdict of not guilty by reason of insanity, indicating that respondent would have been convicted *but for* the rebuttal of the presumption that he was responsible for his actions.[3] *See generally* Minn.Stat. § 611.025. If the prosecution had not proved all elements of respondent's crime beyond a reasonable doubt, a verdict of not guilty would have issued.[4] In short, while

Nonetheless, whatever the Rules of Criminal Procedure presently require, they were not in existence at the time of respondent's trial as they were not adopted until July 1, 1975. *See* Act of May 11, 1971, ch. 250, § 1, 1971 Minn. Laws 454, 454, *as amended by* Act of Apr. 9, 1974, ch. 390, §§ 1–3, 1974 Minn. Laws 697, 697–98, *codified at* Minn.Stat. § 480.059 (1998); *see also State v. Olson*, 274 Minn. 225, 233, 143 N.W.2d 69, 74 (1966) ("[T]here are no statutes in this state governing the procedure in cases where the accused pleads insanity as a defense * * *."). Respondent gave his plea on July 2, 1974, and the jury rendered its verdict on August 12, 1974. As there was no appeal of respondent's trial, there is no transcript to aid in determining whether his trial was bifurcated. In addition, the record does not contain the jury instructions given by the trial court. However, we do have four verdict forms, all of which were in the jury's possession, and only one of which was signed by the jurors. The verdict forms are as follows: (1) guilty of murder in the first degree; (2) guilty of murder in the second degree; (3) not guilty; and (4) not guilty by reason of insanity. The jury signed the fourth form, finding respondent not guilty by reason of insanity. We believe this to be a strong indication that the trial was not bifurcated, and that the defense of insanity was presented in respondent's case-in-chief.

Thus, we are puzzled by the concurrence's statement that "[i]t is inappropriate and constitutionally problematic to describe the result of this first phase of a bifurcated trial as a finding of guilt * * *." It is the majority's view, deducing from the record before us, that regardless of respondent's evidence as to capacity, if the state had not met its burden on every element, the jury would have returned a verdict of not guilty.

Finally, the concurrence states that, at least in a bifurcated trial, "[a] finding that the defendant lacked the mental capacity to form the requisite intent will generally defeat any objective showing of intent." While discussing *Schreiber*, 558 N.W.2d at 480, the concurrence implies that a person adjudged legally insane has been adjudged to lack the mental capacity to form criminal intent. In effect,

a person found not guilty by reason of insanity is not criminally liable, he has been found to have committed the act of which he was accused. A verdict reflecting such a fact is not one "in favor of" respondent.

## II.

 Next, we address respondent's claim that the district court abused its discretion by refusing to expunge respondent's criminal record under the court's inherent power. While the court of appeals did not reach this issue, it was properly preserved for appeal by respondent. The exercise of a court's inherent power to expunge is a matter of equity, and we therefore review the district court's conclusion under an abuse of discretion standard. *See R.L.F.*, 256 N.W.2d at 807; *Nadeau v. County of Ramsey*, 277 N.W.2d 520, 524 (Minn.1979).

Because no constitutional right was involved, in deciding whether to exercise its inherent power to expunge, the district court was to consider whether expungement would yield a benefit to respondent greater than the disadvantages to the public from the elimination of his criminal record and the burden on the court in issuing, enforcing and monitoring an expungement order. *See C.A.*, 304 N.W.2d at 358. In its order denying expungement, the district court noted that the benefit respondent would gain by way of expungement was greater ease in obtaining employment. The court explained that background checks are commonly performed by an employer before an offer for employment is made. Such background checks would reveal respondent's criminal prosecution, and therefore expungement would allow him to avoid such damaging revelations.

Nonetheless, the district court set forth several factors weighing against expungement. First, the court stated that the benefit respondent stood to gain from expungement, if granted, would override the very purpose of the background check. Employers, sometimes pursuant to law and sometimes voluntarily, have required background checks in order to "assess any potential risk involved with hiring certain individuals." Further, the district court reasoned that the public had a "compelling interest in maintaining [respondent's] record of violence, particularly because the underlying offense [respondent] was charged with was murder in the first degree." Finally, the district court noted that respondent "is currently gainfully employed, thus his [criminal record] is not preventing him from obtaining employment." For these reasons, the district court determined that the balancing test weighed in favor of retaining respondent's records. Given this record, we hold that the district court did not abuse its discretion in refusing to expunge under its inherent power.

Reversed.

PAUL H. ANDERSON, Justice (concurring specially).

I concur with the result the majority reaches today. But I write separately to address my concerns about the majority's description of a verdict of not guilty by reason of mental illness as being a verdict that presumes the accused was guilty of the crime charged but for a finding of mental illness or defect.

We have recently discussed the nature of the mental illness defense in *State v. Schreiber*, 558 N.W.2d 474 (Minn.1997). In *Schreiber*, we stated that preventing a defendant from presenting subjective psychological evidence to rebut the state's evi-

the concurrence views a successful defense of insanity, mental illness, or mental deficiency as negating a jury finding that the defendant intended to commit the acts charged. While this is one approach, we believe a more accurate description is that a successful defense negates the statutory presumption of responsibility. If the defense truly negated the element of intent, a defendant presumably would be acquitted with a not guilty verdict.

dence on intent does not violate the defendant's due process rights under the United States or Minnesota Constitutions. *Id.* at 478. We stated in *Schreiber* that once a person has been determined to be "legally insane" or to lack the mental capacity to form a criminal intent, "the defendant is *completely* excused from criminal liability by reason of mental illness." *Id.* at 480 (emphasis in original).

Our reasoning in *Schreiber* was based in part on our earlier decision in *State v. Bouwman,* 328 N.W.2d 703, 706 (Minn. 1982), where we distinguished the defense of mental capacity from other subjective intent defenses, such as age or intoxication. In *Bouwman,* we reiterated the legal presumption that all persons are responsible for their acts and "that they have the capacity to intend what they do." *Id.* at 705 (discussing Minn.Stat. § 611.025 (1980)). As such, the prosecution in a criminal case need only produce factual evidence to show that defendant committed the act for which he has been charged. *See id.* Intent may then be inferred from this objective manifestation of the defendant's intent. *See id.* Evidence of a subjective and psychological nature that may tend to show that the defendant could not form this intent is irrelevant at this point as it does nothing to refute the physical evidence the state has presented. *See id.* However, once the defense of mental illness or defect is asserted, "[t]he question becomes whether the defendant, even though he has manifested the specific intent to do the thing that he did, was laboring under such a defect of reason that *he lacked the capacity to form the intent that was otherwise manifested.*" *Id.* (emphasis added).

Evidence of other subjective defenses to intent, such as intoxication, are permitted in cases, like first-degree murder, where specific intent is an element of the crime to be presented by the defendant in his case in chief. *See id.* at 706. However, in order to avoid confusion on the distinction between intent as an element of the crime

and lack of mental capacity, we have ordered that the trial shall be separated or bifurcated in cases where the defendant intends to offer an insanity defense in addition to challenging other elements of the crime. *See State v. Hoffman,* 328 N.W.2d 709, 716–17 (Minn.1982).

In the first phase of the bifurcated trial, the state presents its case and then the defense presents its case to refute the state's evidence, absent any psychological evidence concerning mental capacity. *See id.* at 716. The defense then rests provisionally. *See id.* This first phase is frequently referred to by the misnomer "guilt phase." *See, e.g., Schreiber,* 558 N.W.2d at 477. However, guilt has not been established. In the second phase, the burden now shifts to the defendant who must overcome by a fair preponderance of the evidence the presumption that he possesses the mental capacity to form the requisite criminal intent. *See Hoffman,* 328 N.W.2d at 717. Here, psychological evidence is relevant and permitted. *See id.*

It is true that at the close of the first phase of the bifurcated trial the jury must find that the state has carried its burden and proven the elements of the crime, including intent. *See* Minn. R.Crim. P. 20.02, subd. 4(6). However, the defendant, who has only provisionally rested, still has a defense to present—that he lacked the mental capacity to form the intent otherwise manifested by his acts.

It is inappropriate and constitutionally problematic to describe the result of this first phase of the bifurcated trial as a finding of guilt, therefore concluding that the defendant was guilty but for a finding of mental illness or defect. Intent remains an essential element of most crimes and specific intent an element of first-degree murder. The state must still prove all elements of a crime beyond a reasonable doubt. A finding that the defendant lacked the mental capacity to form the requisite intent will generally defeat any objective showing of intent. Despite the pejorative connotations society may place

on a finding of not guilty by reason of mental illness, it is an acquittal of the crime as charged that *"completely* excuses [the defendant] from criminal liability" (emphasis in original). *Schreiber,* 558 N.W.2d at 480; *see also Black's Law Dictionary* 24 (7th ed.1999) (defining "acquittal" as "legal certification * * * that an accused person is not guilty of the charged offense"); *see generally* Minn.Stat. § 253B.01 -.23 (1998) (Minnesota Commitment and Treatment Act) (referring to verdict of not guilty by reason of mental illness as "an acquittal of a criminal charge under section 611.026").

In this case, Ambaye was found not guilty by reason of insanity before we required bifurcated trials. However, that difference has made the "but for" reasoning of the majority even more problematic. The jury considered all of these issues together and we can make no clear statement about what the jury intended other than their stated verdict—not guilty by reason of insanity.

Despite the fact that a finding of not guilty by reason of mental illness completely excuses a defendant from criminal liability, I agree with the majority that it is not a favorable determination under Minn. Stat. § 609A.02, subd. 3 (1998). I agree that a favorable determination under this statute is a technical term, limited to those instances when a criminal charge has been resolved by a finding of not guilty or by voluntary dismissal. Additionally, while a finding of not guilty by reason of mental illness completely excuses the defendant's criminal liability, it does not mean that society does not continue to require protection from that person's dangerous propensities. After a finding of not guilty by reason of insanity, the defendant is held in custody by the court pending a mental evaluation and the court continues to exercise supervision and control over the civil commitment process. *See generally* Minn. Stat. § 253B.07, subd. 2a (1998). Consequently, while I disagree with the majority's description of the nature of the verdict

of not guilty by reason of mental illness, I agree that it is not a favorable determination under Minn.Stat. § 609A.02, subd. 3.