**STATE of Minnesota, Appellant,**

v.

**Stephen Matthew SCHULTZ, Respondent.**

No. A03–1240.

Court of Appeals of Minnesota.

March 30, 2004.

Considered and decided by
TOUSSAINT, Chief Judge,
HALBROOKS, Judge, and HUSPENI,
Judge.

## OPINION

HUSPENI, Judge.*

In challenging an order granting respondent's petition for expungement of his felony assault conviction records, appellant argues that the district court abused its discretion in exercising its inherent authority to expunge. Alternatively, appellant argues that if any exercise of inherent authority was proper, such authority is limited to expungement of judicial records, and does not extend to records of the executive branch. Because the district court has broad discretion over all court records and agents of the court, we affirm its order to expunge all judicial records pertaining to respondent's conviction. Because the court's inherent authority to expunge is limited in cases not involving a petitioner's constitutional rights, we reverse the portion of the order sealing non-judicial records maintained by the executive branch. Since all executive agencies party to this action share identical interests, this reversal extends to both appealing and non-appealing executive agencies.

## FACTS

On July 23, 1996, 18–year–old respondent Steven M. Schultz was arrested for second-degree assault, a felony under Minn.Stat. § 609.222 (1994). He pleaded guilty to that offense on March 4, 1997, after learning from counsel that his conviction could later be set aside upon good behavior pursuant to the "youthful offender" statute, codified at Minn.Stat.

Mike Hatch, Attorney General, St. Paul, MN; and Peter A. MacMillan, Michele R. Wallace, MacMillan & Wallace, PLLP, Minneapolis, MN, for appellant.

Leonardo Castro, Chief 4th District Public Defender, Barbara S. Isaacman, Assistant Public Defender, Minneapolis, MN, for respondent.

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

§ 609.166 (1994). Unbeknownst to either Schultz or his attorney, however, the "youthful offender" statute had been repealed in the previous legislative session. 1996 Minn. Laws ch. 408, art. 9, § 10.

Schultz's prison sentence was stayed for three years subject to several conditions, including service of jail time. During this period, he enrolled in behavioral therapy, improved his vocational skills, and volunteered in his community. He was discharged from probation on March 6, 2000, and the felony was reduced to a misdemeanor.

Schultz subsequently petitioned for expungement of all data related to the offense, claiming that, though the count was ultimately reduced to a misdemeanor, any record check conducted on him would reveal that he had pleaded guilty to a felony. Thus, he asserted, he was unable to find gainful employment or adequate housing.

Both appellant City of Crystal ("the city")[1] and the State of Minnesota (state) objected to the expungement, arguing (1) the circumstances surrounding Schultz's conviction do not qualify him for expungement, and (2) the court's inherent power to expunge records does not extend to the executive branch.

The district court, in granting Schultz's petition and ordering all public records relating to the arrest, indictment, trial, and subsequent discharge sealed, stated:

> There is clear and convincing evidence that sealing the record would yield a benefit to [Shultz] commensurate with the disadvantage to the public and public safety of: (1) sealing the record; and

(2) burdening the court and public authorities to issue, enforce and monitor an Expungement Order (Minn.Stat. § 609A.03, subd. 5(2)).

 . . . .

> The court administrator shall notify the following of this order: County Attorney, Crystal City Police Department, Hennepin County Sheriff, and the Bureau of Criminal Apprehension.

Only the city now appeals.

## ISSUES

1. Did the district court, in exercising its inherent authority, abuse its discretion by expunging judicial records?

2. Did the district court err in ordering the expungement of executive records?

3. May the City of Crystal assert the rights of parties not before this court?

## ANALYSIS

There are two legal bases that provide for the expungement of a petitioner's criminal records. The first is statutory: a party may petition for expungement if the criminal proceedings were "resolved in favor of the petitioner." *State v. Ambaye*, 616 N.W.2d 256, 257 (Minn.2000) (quoting Minn.Stat. § 609A.02, subd. 3). The second basis is the court's inherent expungement power. *Id.* This inherent power may be exercised "where the petitioner's constitutional rights may be seriously infringed by retention of his records," or, where constitutional rights are not involved, when the court finds "expungement will yield a benefit to the petitioner commensurate with the disadvan-

---

1. There is some debate as to appellant's proper name in these proceedings. Shultz argues that appellant should be referred to as the Crystal Police Department because other city executive agencies are unaffected by the court's order. *See* Minn.Stat. §§ 388.051, subd. 1(c), 487.25, subd. 10 (2002) (felonies prosecuted not by the city attorney's office, but by the county attorney). Though true, a police department is a component of city government. *State v. C.A.*, 304 N.W.2d 353, 361 (Minn.1981). As such, it is entirely appropriate for this court to refer to appellant as City of Crystal.

tages to the public from the elimination of the record and the burden on the court in issuing, enforcing and monitoring an expungement order." *Id.* at 258.

The parties agree that Minn.Stat. § 609A.02 (2002) cannot apply to Schultz because the proceedings were not resolved in his favor. *See id.* at 259 (concluding that the term "in favor of" "includes verdicts of not guilty and voluntary dismissals, and does not include resolutions where the defendant pleaded guilty"); *City of St. Paul v. Froysland,* 310 Minn. 268, 275–76, 246 N.W.2d 435, 439 (1976) (concluding that the statute was not intended to protect those who pleaded guilty). This court therefore need only address the propriety and scope of a district court's exercise of its inherent power to grant expungement. Further, because Schultz does not allege that his constitutional rights are involved in this matter, we limit our discussion to the inherent power of the court to grant expungement in the absence of constitutional concerns.

## I.

 "The exercise of a court's inherent power to expunge is a matter of equity, and we therefore review the district court's conclusion under an abuse of discretion standard." *Ambaye,* 616 N.W.2d at 261. A district court's findings of fact will not be set aside unless clearly erroneous. *Novack v. Northwest Airlines, Inc.,* 525 N.W.2d 592, 597 (Minn.App.1995). Clearly erroneous means "manifestly contrary to the weight of the evidence or not supported by the evidence as a whole." *Id.*

 The city first claims that because Schultz "is only experiencing the fruits of his prior conduct," the district court

abused its discretion when it exercised its inherent authority in any manner or to any extent. Specifically, the city urges that there is no support for the determination of the district court that the benefit to Schultz in obtaining better employment or housing outweighed the burden to the public of eliminating the access of a prospective employer or landlord to Schultz's criminal history. Our examination of the record, however, reveals support for the district court's determination on this issue.

Schultz was arrested for second-degree assault shortly after his eighteenth birthday and before graduating from high school. He had had psychological difficulties before the incident, and has since controlled those difficulties through medication. Prior to his guilty plea, Schultz's public defender mistakenly advised him that his record could be expunged after five years. He has also undergone extensive rehabilitation efforts, including volunteering in the community, treatment, and vocational training. The record reflects no criminal incidents since the 1996 arrest. Further, it is undisputed that Schultz has had difficulty overcoming his employment and housing problems.

We conclude that there is ample support in the record for granting expungement, and that the trial court did not err in concluding that the benefits to Schultz were commensurate with the disadvantages to the public and the burden on the court. As such, we shall not disturb the district court's expungement of all judicial records relating to Schultz's conviction.[2] *See State v. C.A.,* 304 N.W.2d 353, 358 (Minn.1981).

## II.

 The city next argues that even if the district court did not abuse its discre-

---

**2.** We note also that the district court that granted Schultz's petition for expungement was the same court that accepted his guilty plea in 1997.

tion in determining that expungement was proper, it lacked the authority to seal non-judicial records possessed by the executive branch. This is the more difficult of the issues raised by the city, and existing case-law addressing the issue does not appear to be entirely consistent. A careful review of the precedent established by both this court and the Minnesota Supreme Court convinces us, however, that the city is correct in its assertions.

In *C.A.*, the supreme court first clearly defined the authority to grant expungement when a petitioner's constitutional rights are not involved, framing the issue as the "inherent power enabling courts to grant relief when it is necessary to the performance of their unique judicial functions." *Id.* at 358. The *C.A.* court held that expungement may be ordered when "essential to the existence, dignity, and function of a court because it is a court." *Id.* (quoting *Clerk of Lyon County v. Lyon County Comm'rs*, 308 Minn. 172, 176, 241 N.W.2d 781, 784 (1976)). Part of that "function," the court held, is to control court records and agents of the court to prevent unfairness to individuals. *Id.*

The *C.A.* court also stated that, under appropriate circumstances, sheriffs and prosecutors could be considered "agents of the court" and therefore "within the reach of the court's inherent power to control its internal processes," *id.* at 360, and that, to a limited extent, named individuals in police departments could also be subject to orders not to disclose in certain situations. *Id.* at 361. The court cautioned, however, that because this inherent authority "extends only to its unique judicial functions," courts must "proceed cautiously" in order to respect the authority of the executive and legislative branches of government. *Id.* at 358–59.

In *State v. P.A.D.*, 436 N.W.2d 808 (Minn.App.1989), *review denied* (Minn.

May 12, 1989), the district court had denied a petition for expungement, reasoning that because the petitioner alleged no violation of constitutional rights no relief was possible. This court commendably recognized that "although courts are empowered to order expungement, they 'must proceed cautiously in exercising that authority in order to respect the equally unique authority of the executive and legislative branches of government.'" *Id.* at 810.

Relying upon *C.A.*, however, the *P.A.D.* court remanded the matter to the district court, and observed that "trial courts are [not] precluded from ordering that records and materials controlled by the other two branches of government be returned or sealed, if doing so is necessary or conducive to fashioning a meaningful remedy." *Id.*

In focusing solely on *C.A.'s* caveat that inherent authority to expunge should be exercised with caution and respect for the other branches of government, *P.A.D.* appeared to grant far broader inherent powers to expunge than did *C.A.* Under *P.A.D.*, the court's authority to expunge suddenly appeared to extend in cases not involving constitutional rights to *any* individual or agency and *any* record provided the benefit to the petitioner was commensurate with any disadvantage to the public or burden on the court. *Id.* The court in *P.A.D.* failed to address what, we conclude, was a critical qualification in *C.A.*: that a court's authority to expunge under these circumstances "[e]xtends only to its unique judicial functions." *C.A.*, 304 N.W.2d at 358.

In *In re Quinn*, the supreme court clarified and re-emphasized the limits on the judicial authority to control other branches of government when neither statutory nor constitutional rights apply. 517 N.W.2d 895, 897–98 (Minn.1994). The petitioner in *Quinn*, a professional hockey player ar-

rested after allegedly raping a woman in a hotel, attempted to seal his arrest records after the county attorney decided not to press charges. *Id.* at 897. Both the district court and the court of appeals, relying on *C.A.*, found that the petitioner's arrest record could be expunged, and his investigative file sealed. *Id.* Though the supreme court ultimately reversed the court of appeals' decision because of the Minnesota Data Practices Act, it reinforced *C.A.'s* holding that a court's inherent authority to expunge without constitutional implications extends only to "unique judicial functions," and determined that the arrest records at issue were not "judicial records" as required under *C.A. See id.* at 900.

Recently, in *State v. T.M.B.*, this court relied on *Quinn*, and recognized the court's lack of inherent authority to expunge non-judicial executive records absent evidence of an injustice resulting from an abuse of discretion in the performance of a governmental function. *State v. T.M.B.*, 590 N.W.2d 809, 813 (Minn.App.1999), *review denied* (Minn. June 16, 1999). In so declaring, the *T.M.B.* court noted that "[t]he function of preparing and maintaining criminal records is a unique constitutional function of the executive branch." *Id.* at 812. As such, a court may not intrude upon this function unless such intrusion is essential to the existence, dignity, and function of the court. *Id.* Expungement, the court held, becomes "essential" only when a petitioner's constitutional rights have been violated. *Id.* And although we acknowledged the court's inherent authority first recognized in *C.A.* to control court records

and agents of the court, we noted that *criminal* records are not *court* records, and therefore fall outside the scope of the court's authority under the separation-of-powers doctrine. *Id.*

Schultz argues that *T.M.B.* was wrongly decided, and inappropriately relied on *Quinn* to come to a conclusion that "flies in the face" of previous caselaw. We cannot agree. In holding that the separation-of-powers doctrine prevents expungement of records held by other branches of government absent evidence that executive agents abused their discretion in the performance of a governmental function, *T.M.B.* remains consistent with *C.A.*, which limited the court's inherent authority to "unique judicial functions," corresponding court records, and agents of the court. *C.A.*, 304 N.W.2d at 358. *T.M.B.'s* reliance on *Quinn* to hold that non-judicial records remain outside of the scope of the court's inherent authority was therefore proper.[3]

To the extent that *P.A.D.* appears to condone judicial intrusion, without constitutional implications, into the affairs of other branches of government, it must be read cautiously, construed narrowly, and brought within the analysis and rationale of *C.A.* and *Quinn.* As indicated earlier, the existing Minnesota caselaw has neither guided nor informed our decision here in a totally consistent manner. We conclude, however, that the important separation-of-powers issues implicated in expungement questions and the public policy concerns present in those questions compel the decision we reach.

Considering the limitations that we conclude have been placed by both the su-

---

**3.** Schultz argues that this court should consider that *Ambaye,* the most recent supreme court case addressing a court's authority to expunge, makes no reference to *Quinn,* and relies instead on earlier cases, such as *C.A.* Though true, the expungement order in dispute in *Ambaye* extended only to his indictment and prosecution—in other words, "court records." *Ambaye,* 616 N.W.2d at 257. *Ambaye* did not address non-judicial records possessed by another branch of government.

preme court and this court on the power to order expungement of records possessed by other branches of government, the district court in this case overstepped its authority by ordering the executive branch to seal non-judicial records. As such, that portion of the district court's order must be reversed.

## III.

■ Because the city is the sole executive agency appealing the district court order, we must now examine whether our reversal should extend to non-appealing agencies. Schultz contends that it should not because those parties failed to join the appeal, file separate notices of appeal, or file notice of review.

A number of Minnesota cases state the general rule that a reviewing court may not address issues not preserved for appeal. *E.g., Olson v. Lyrek,* 582 N.W.2d 582, 584 n. 1 (Minn.App.1998); *City of Ramsey v. Holmberg,* 548 N.W.2d 302, 305 (Minn.App.1996), *review denied* (Minn. Aug. 6, 1996). The Minnesota Supreme Court has also recognized that, in general, an appealing party may not assign errors affecting other parties. *Mocuik v. Svoboda,* 253 Minn. 562, 566, 93 N.W.2d 547, 550 (1958); *In re Estate of Wilson,* 223 Minn. 409, 413, 27 N.W.2d 429, 431–32 (1947). The city argues, however, that these general rules have a notable exception where the non-appealing parties' rights are intertwined with those of the appealing party, or where necessary to provide the appellant with full and effective relief.

Minnesota caselaw specifically addressing exceptions to the general non-relief rule is decidedly limited. This court has held that the exception applies only to circumstances where "the ruling on appeal would place the nonappealing parties in a position worse than before the appeal," such as cases involving jointly liable defen-

dants. *Poured Concrete Founds., Inc. v. Andron, Inc.,* 507 N.W.2d 888, 892 (Minn. App.1993), *review denied* (Minn. Jan. 27, 1994). We noted that non-appealing parties should "receive the benefit only if their interests are so intertwined that they are harmed by the result on appeal." *Id.* at 892–93.

The city urges us to focus on the "intertwined interests" of the different executive agencies, and the overall harm that would result from allowing one agency to retain public records, while preventing another from doing so. It encourages this court to find guidance in *Ex parte Elliot,* 815 S.W.2d 251 (Tex.1991), a case decided by the Texas Supreme Court under similar circumstances. In *Elliot,* the district attorney appealed a trial court's expungement of all petitioner's criminal records. 815 S.W.2d at 251. The Texas Court of Appeals sustained the district attorney's point of error, but limited its reformation of the trial court order to records maintained by him. *Id.* The Texas Supreme Court reversed the limited reformation, finding that the "law governing expunction of criminal records creates a unique situation in which all persons and agencies party to an expunction action share not only interwoven but identical interests." *Id.* at 252. As such, the court reasoned, reversal of the entire district court order was warranted under the circumstances. *Id.*

Though *Elliot* has no precedential value in this jurisdiction, we are persuaded by its reasoning and its underlying policy arguments. Expungement by some, but not all agencies, would undermine the "common goals of uniform management of documentation and effective deterrence of recidivism." *Id.* Further, a limited reversal would not provide full and effective relief for the appealing party, for it would be "unable to cross-reference its criminal records with those of other agencies." *Id.*

When weighing these policy considerations along with the unwarranted judicial intrusion into executive-branch functions, reversal of the entire decision seems justified. The United States Supreme Court has recognized an appellate court's power to reverse a judgment *in toto* if the contrary result would work an injustice. *See Washington Gas–Light Co. v. Lansden,* 172 U.S. 534, 556, 19 S.Ct. 296, 304, 43 L.Ed. 543 (1899). Here, were this court to reverse the district court's order solely as it pertains to the city, it would "work an injustice" because it would be upholding the expungement of some non-court records held by the executive branch. *T.M.B.* held that this "intrusion upon the constitutional functions of the executive branch ... is impermissible under the separation of powers doctrine." *T.M.B.,* 590 N.W.2d at 812–13. As such, the district court's order expunging all non-judicial records held by executive agencies must be reversed in its entirety.

## DECISION

Because the district court has inherent authority over all court records and agents of the court, its order to expunge all court records pertaining to Schultz's conviction will not be disturbed. But because the court's inherent authority to order expungement is limited in cases not involving a petitioner's constitutional rights, we reverse the portion of the district court's order instructing the sealing of non-judicial records maintained by the executive branch. This reversal extends to both appealing and non-appealing executive agencies.

**Affirmed in part and reversed in part.**