716 N.W.2d 360 (2006)
STATE of Minnesota, Appellant,
v.
H.A., Respondent.
No. A05-1792.
Court of Appeals of Minnesota.
June 20, 2006.
*361 Steven M. Tallen, Minneapolis, MN, for appellant.
H. A., Plymouth, MN, pro se respondent.
Considered and decided by STONEBURNER, Presiding Judge; DIETZEN, Judge; and HARTEN, Judge.[*]

*362 OPINION
DIETZEN, Judge.
Appellant challenges the district court order and judgment granting respondent's expungement petition, arguing that the district court abused its discretion by expunging court and executive-branch records. Because the district court's finding of infringement of respondent's constitutional rights is clearly erroneous, and the district court failed to find that the benefits of expungement to respondent are commensurate with the disadvantages to the public, we conclude that the district court abused its discretion by exercising its inherent authority to expunge and, therefore, we reverse.

FACTS
In September 2001, appellant State of Minnesota charged respondent H.A. with interference with privacy in violation of Minn.Stat. § 609.746, after he allegedly peered under changing room walls at a 13-year-old girl while she tried on clothes at a mall department store.
Respondent entered an Alford plea to the charge under an agreement staying the imposition of his sentence, on the conditions that respondent commit no similar offenses, complete a sex offender assessment, and either pay a fine or perform community service. Respondent met these conditions, and the guilty plea was vacated and the charge dismissed.
Respondent then filed a petition for expungement of records pertaining to the interference with privacy offense, stating, "I can't find a job because [of] my records. I need to pay my home's mortgage. I'm disable[d]." The Bureau of Criminal Apprehension (BCA) did not oppose respondent's petition. Appellant opposed the petition, arguing that respondent did not meet the statutory requirements for expungement and that there was no basis to expunge the records under the court's inherent authority.
At the expungement hearing, respondent testified that he sought expungement because he had applied for a position in airport security and feared that his record would adversely affect his employability. Following the hearing, the district court found that
[t]here is arguably an infringement of [respondent's] constitutional rights. A part of the plea negotiation was that the case would be dismissed upon successful completion of the Stay of Imposition. At the time of the plea, the plea negotiation was understood to include cleaning up the [respondent's] record after the period of the stay of imposition had elapsed.
The district court concluded that it did not have statutory authority to expunge respondent's records, but had authority under its inherent powers; and it granted expungement of court records and records of the BCA, other law enforcement agencies, and the city, county, and attorney general's offices. This appeal followed.

ISSUES
I. Did the district court abuse its discretion by granting expungement of respondent's court records under its inherent powers?
II. Did the district court abuse its discretion by granting expungement of respondent's executive-branch records under its inherent powers?

ANALYSIS

I.
Appellant raises two issues on appeal. First, appellant argues that the district *363 court lacked inherent authority to expunge respondent's court records.[1] Although respondent did not file a brief, the appeal is decided on the merits. Minn. R. Civ.App. P. 142.03.
A district court's exercise of its inherent power to expunge is a matter of equity, which this court reviews under an abuse-of-discretion standard. State v. Ambaye, 616 N.W.2d 256, 261 (Minn.2000). A district court's findings of fact will not be set aside unless clearly erroneous. Novack v. Northwest Airlines, Inc., 525 N.W.2d 592, 597 (Minn.App.1995). Clearly erroneous means "manifestly contrary to the weight of the evidence or not supported by the evidence as a whole." Id. (quotation omitted).
A district court's inherent authority to issue expungement orders affecting court records is limited to: (1) when the petitioner's constitutional rights may be seriously infringed by retention of petitioner's records; and (2) when a petitioner's constitutional rights are not involved, but the court determines that "expungement will yield a benefit to the petitioner commensurate with the disadvantages to the public from the elimination of the record and the burden on the court in issuing, enforcing and monitoring an expungement order." Ambaye, 616 N.W.2d at 258 (quotation omitted).
Here, the record provided on appeal does not contain any evidence that future expungement was a condition of the plea agreement, nor does it indicate any other factual basis for a finding of constitutional infringement. The conditions of the plea agreement, which did not include expungement, were stated on the record at the guilty-plea hearing. Further, respondent did not argue that a promise of expungement was made under the plea agreement, or assert any other constitutional infringement as a basis for expungement. Consequently, the district court's finding of a constitutional infringement is contrary to the record and, therefore, clearly erroneous.
The second ground for expungement under the court's inherent authority is a determination that respondent's benefits from expungement are commensurate with the disadvantages to the public and the court. Two recent Minnesota cases discuss the factors relevant to this determination. See id.; State v. Schultz, 676 N.W.2d 337, 341 (Minn.App.2004). In Ambaye, the Minnesota Supreme Court held that the district court did not abuse its discretion by refusing to expunge:
[T]he court stated that the benefit respondent stood to gain from expungement, if granted, would override the very purpose of the background check. Employers, sometimes pursuant to law and sometimes voluntarily, have required background checks in order to "assess any potential risk involved with hiring certain individuals." Further, the district court reasoned that the public *364 had a "compelling interest in maintaining [respondent's] record of violence, particularly because the underlying offense [respondent] was charged with was murder in the first degree." Finally, the district court noted that respondent is "currently gainfully employed, thus his [criminal record] is not preventing him from obtaining employment."
616 N.W.2d at 261. In Schultz, this court held that the benefits to petitioner were commensurate with the disadvantages to the public and the burden on the court when the record indicated that petitioner had controlled his mental-health issues, undergone "extensive rehabilitation efforts," not been involved in any criminal incidents since the offense on record, and "has had difficulty overcoming his employment and housing problems." 676 N.W.2d at 341.
Thus, the factors to be considered by the district court are: (a) the extent that a petitioner has demonstrated difficulties in securing employment or housing as a result of the records sought to be expunged; (b) the seriousness and nature of the offense; (c) the potential risk that the petitioner poses and how this affects the public's right to access the records; (d) any additional offenses or rehabilitative efforts since the offense, and (e) other objective evidence of hardship under the circumstances. Ambaye, 616 N.W.2d at 261 (seriousness and risk); Schultz, 676 N.W.2d at 341 (difficulties with employment and housing, nature of the offense, subsequent offenses and rehabilitative efforts). While we appreciate the informality of expungement proceedings, we are unable to review whether a grant or denial of expungement constitutes an abuse of discretion unless the district court makes findings or determinations on the record regarding these factors. See, e.g., Crowley Co. v. Metro. Airports Comm'n, 394 N.W.2d 542, 545 (Minn.App.1986) (noting that, absent findings, it is impossible to know what the district court concluded on the issues and, thus, whether denial of a motion was an abuse of discretion).
The first factor requires that the petitioner demonstrate difficulties in securing employment or housing as a result of the criminal records. Here, the district court found that "[t]he benefits to [appellant] of receiving an expungement are to find employment." But while it is true that respondent sought expungement in order to secure employment, respondent did not indicate a history of unsuccessful employment attempts. Instead, respondent appeared to be seeking expungement in order to obtain a specific position with airport security. And because respondent owns his own home, housing is not an issue. Thus, this factor does not weigh in favor of expungement.
The second factor considers the nature and severity of the offense on record. Although the district court did not address this factor, the record indicates that respondent's interference-with-privacy offense was committed against a 13-year-old girl. And the legislature recently increased the degree of severity of this offense from a misdemeanor to a gross misdemeanor for a first-time offense, and from a gross misdemeanor to a felony for a second-time offense, signifying its intent to treat this offense more seriously, particularly in regard to repeat offenders. Minn. Stat. § 609.746, subd. 1 (Supp.2005); see 2005 Minn. Laws. ch. 136, art. 17, § 43. Consequently, this factor also does not weigh in favor of expungement.
The third factor compares a petitioner's potential risk to the public's right to access the records. The district court found that "[t]here is a strong public interest in maintaining accurate public records. The disadvantages to the public of expungement *365 are that the criminal justice system will have inaccurate files about offenders and prosecutors and courts will not know whether or not a defendant is a first time offender."
Law enforcement and prosecutorial access to records is particularly important where, as here, the offense is sexual in nature and therefore prone to recidivism. See, e.g., In re C.M., 578 N.W.2d 391, 394 (Minn.App.1998) (taking judicial notice of the problem of sex offender recidivism). The legislature has also deemed commission of an interference-with-privacy offense an indicator of risk in certain employment situations, and, therefore, employers have a legitimate interest in access to such information when making hiring decisions. See, e.g., Minn.Stat. §§ 119B.125, subd. 2(d) (2004) (prohibiting authorization as family child-care provider if person was convicted of, admitted to, or a preponderance of evidence indicates repeat violations of section 609.746 in last ten years); 245C.14-.15 (2004) (disqualifying repeat offenders under section 609.746 from positions involving direct contact with clients receiving human services). Because respondent is seeking employment with airport security, a position of authority involving access to individuals' persons and property, employer access to records pertaining to this particular offense is clearly relevant. Thus, this factor weighs against expungement.
The fourth factor considers any additional offenses or rehabilitative efforts since the offense on record. The district court stated in its findings that "[t]he City further argues that this offense is similar to one for which [respondent] is currently on probation and as such this case along with the other case, works to establish a pattern of behavior." A subsequent repeat offense would weigh heavily against expungement, but it is unclear from the record whether there is a factual basis for this finding. The record does not indicate any rehabilitative efforts on respondent's part. Thus, this factor does not support expungement.
Because the record does not establish the existence of any constitutional infringement, and the demonstrated benefit to respondent is not commensurate with the disadvantages to the public, the district court abused its discretion by granting expungement of respondent's court records.

II.
Second, appellant argues that the district court's inherent authority to expunge judicial records does not extend to records maintained by executive agencies, and therefore, the district court erred by ordering expungement of executive-branch records of the BCA, other law enforcement agencies, and the city, county, and attorney general's offices.
The Minnesota Supreme Court has stated that the inherent authority of courts to control the performance of judicial functions extends to expungement orders affecting court records. State v. C.A., 304 N.W.2d 353, 358 (Minn.1981). But the supreme court cautioned, "Because this authority of the court extends only to its unique judicial functions, courts must proceed cautiously in exercising that authority in order to respect the equally unique authority of the executive and legislative branches of government over their constitutionally authorized functions." Id. at 358-59 (emphasis added).
The supreme court later applied the "judicial-function" standard to the district court's decision to expunge the records of a petitioner seeking expungement of police and prosecutorial records after the petitioner was arrested for rape but never *366 charged, concluding that expungement was not necessary to protect a "unique judicial function" because the courts cannot generally control "how prosecutors run their offices or how police departments investigate crimes[,]" and therefore the judiciary had no legitimate interest in expunging or sealing such records. In re Quinn, 517 N.W.2d 895, 900 (Minn.1994). Relying on the Quinn decision, this court subsequently held that:
Expungement becomes essential to the performance of the courts' fundamental function of protecting legal rights only when a petitioner's rights have been violated. Thus, absent evidence that executive agents abused their discretion in the performance of a governmental function, the judiciary may not interfere with the executive's record-keeping function by ordering the expungement of its records.
State v. T.M.B., 590 N.W.2d 809, 812 (Minn.App.1999), review denied (Minn. June 16, 1999). And in State v. Schultz, this court again held that, absent evidence of injustice resulting from an executive agent's abuse of discretion, the district court oversteps its inherent authority when it orders the executive branch to seal records. 676 N.W.2d at 343-44.
Because the record does not contain evidence that any executive agents abused their discretion, the district court lacked inherent authority to order expungement of respondent's executivebranch records.

DECISION
Because the district court's finding of infringement of respondent's constitutional rights is clearly erroneous, and the district court failed to find that the benefits of expungement to respondent are commensurate with the disadvantages to the public, we conclude that the district court abused its discretion by expunging respondent's court and executive-branch records under its inherent authority and, therefore, we reverse.
Reversed.
NOTES
[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.
[1] District courts have both statutory and inherent powers to grant expungement relief. State v. Davisson, 624 N.W.2d 292, 295 (Minn.App.2001), review denied (Minn. May 5, 2001). The district court has statutory authority under Minn.Stat. § 609A.02, subd. 3 (2004), to expunge all records relating to an arrest if the proceedings were resolved "in favor" of the person petitioning for expungement. See State v. J.Y.M., 711 N.W.2d 139, 141 (Minn.App.2006). Here, the district court properly determined that it lacked statutory authority to expunge respondent's records because the proceedings were not resolved in respondent's favor. See State v. A.C.H., 710 N.W.2d 587, 589 (Minn.App.2006) ("dismissal after acceptance of a plea and a finding of guilt, most commonly when imposition of sentence is stayed, is not a resolution in the defendant's favor"). Therefore, the district court's statutory authority to grant expungement is not at issue on appeal.