770 N.W.2d 177 (2009)
STATE of Minnesota, et al., Respondents Below,
City of Crystal, Appellant,
v.
N.G.K., Respondent.
No. A08-1437.
Court of Appeals of Minnesota.
July 28, 2009.
*178 Peter A. MacMillan, Michele R. Wallace, MacMillan, Wallace, Athanases & Patera, P.A., Minneapolis, MN, for appellant.
N.G.K. pro se respondent.
Considered and decided by PETERSON, Presiding Judge; JOHNSON, Judge; and STAUBER, Judge.

OPINION
JOHNSON, Judge.
Eleven years after his conviction of gross-misdemeanor theft, N.G.K. sought to expunge the records of the conviction. The district court ordered the expungement of all records of N.G.K.'s conviction possessed by the judicial branch and some records of the conviction possessed by certain *179 offices of the executive branch. The City of Crystal appeals. We conclude that the district court did not err by ordering the expungement of records possessed by the judicial branch but that the district court erred by ordering the expungement of records possessed by the executive branch. Therefore, we affirm in part and reverse in part.

FACTS
In June 1997, the state charged N.G.K. with gross-misdemeanor theft in violation of Minn.Stat. § 609.52, subds. 2(1), 3(4) (1996). He pleaded guilty. The district court sentenced him to 30 days in jail but stayed the jail sentence for one year and imposed a $200 fine. It appears from the record that N.G.K. abided by the terms of his stayed sentence and was not required to serve time in jail.
In March 2008, N.G.K. petitioned the district court for an order expunging all state government records of his 1997 conviction. In the petition, N.G.K. stated that he was being excluded from employment opportunities and was concerned about his ability to qualify for the financing necessary to purchase a home. N.G.K. served the petition on eight offices of the executive branch: the Office of the Hennepin County Sheriff, the Office of the Hennepin County Attorney, the Minnesota Department of Corrections, the Hennepin County Department of Community Corrections, the Minnesota Bureau of Criminal Apprehension, the Office of the Minnesota Attorney General, the Crystal Police Department, and the Crystal City Attorney.
In May 2008, the district court held an evidentiary hearing at which N.G.K. testified. The City of Crystal and the three state agencies identified above opposed the motion via memoranda filed with the district court. None of the executive-branch offices that were served with the petition made an appearance at the district court hearing.
In June 2008, the district court issued an order granting N.G.K.'s petition in part and denying it in part. With respect to records possessed by the judicial branch, the district court ordered that all records "concerning the above-entitled matter, including records of arrest, citation, and charges relative to the offense," be sealed and that the court administrator "refrain from disclosing or revealing the contents thereof without further Order of the Court." With respect to records possessed by the executive-branch offices that were served with the petition, the district court noted "the limitations on the Court's authority in this type of case" and ordered that the records be sealed "to the extent that no records are public regarding any pleas, findings, convictions, warrants issued by the Court, or any other data generated as part of judicial proceedings." The city appeals.

ISSUES
I. Did the district court err by ordering the expungement of records possessed by the judicial branch?
II. Did the district court err by ordering the expungement of records possessed by certain offices of the executive branch?

ANALYSIS

I.
The city first argues that the district court erred by granting N.G.K.'s petition for expungement with respect to records possessed by the judicial branch. There are two legal bases for the expungement of criminal records: Minnesota Statutes chapter 609A and a court's inherent authority. State v. Ambaye, 616 N.W.2d 256, 257 (Minn.2000). In this case, N.G.K. sought expungement pursuant to the *180 court's inherent authority. A district court's exercise of its inherent authority to expunge records that are located within the judicial branch is a matter of equity, which this court reviews under an abuse-of-discretion standard of review, id., although findings of fact underlying a district court's decision will be set aside if they are clearly erroneous, State v. H.A., 716 N.W.2d 360, 363 (Minn.App.2006).
A district court may exercise its inherent authority to expunge criminal records in two situations. Ambaye, 616 N.W.2d at 258. First, a court may order expungement to prevent a serious infringement of a petitioner's constitutional rights. Id. Second, a court may use its inherent authority if "expungement will yield a benefit to the petitioner commensurate with the disadvantages to the public from the elimination of the record and the burden on the court in issuing, enforcing and monitoring an expungement order." Id. (quotation omitted). Because N.G.K. has not alleged a violation of his constitutional rights, we analyze only the second rationale for expungement pursuant to a court's inherent authority.
When determining whether the benefit to a petitioner of expungement is commensurate with the disadvantages to the public, a district court should consider five factors:
(a) the extent that a petitioner has demonstrated difficulties in securing employment or housing as a result of the records sought to be expunged; (b) the seriousness and nature of the offense; (c) the potential risk that the petitioner poses and how this affects the public's right to access the records; (d) any additional offenses or rehabilitative efforts since the offense, and (e) other objective evidence of hardship under the circumstances.
H.A., 716 N.W.2d at 364. In this case, the district court considered each of these factors, stating that N.G.K. "has shown that he has had difficulty finding new employment due to this record"; that "[t]he offense is a non-violent misdemeanor"; that "the public's right to access these records will be impaired"; and that N.G.K. "has rehabilitated himself," "has had no new charges since the offense," and "has been gainfully employed." The district court concluded, "In applying the balancing test, the Court finds that [N.G.K.] proved by clear and convincing evidence that the benefits [he] would receive are commensurate with the disadvantages to the public from the elimination of the record and the burden on the court in issuing and enforcing an expungement order."
The city contends that N.G.K. "alleged no specific incident of a detriment" and "alleged only in generalities that he was having difficulty moving up in his career and that he feared he may be held back from buying a home due to the record of his conviction." This argument goes to the first factor, whether a petitioner has "demonstrated difficulties in securing employment or housing as a result of the records sought to be expunged." H.A., 716 N.W.2d at 364.
The city is correct that a petitioner may not justify expungement with "speculative" evidence. See Barlow v. Commissioner of Pub. Safety, 365 N.W.2d 232, 234 (Minn.1985). But N.G.K. testified that he applied for a job with another company and was not considered because of his prior conviction. He further testified that expungement is necessary "in order to move to the next level" in his career. N.G.K. was not cross-examined concerning the details of how his prior conviction limits his advancement or how expungement would benefit him. Although N.G.K.'s evidence is somewhat vague, the district court *181 did not clearly err by finding that he "has demonstrated difficulties in securing employment. . . as a result of the records sought to be expunged." H.A., 716 N.W.2d at 364.
The city does not challenge the district court's analysis of the other four factors. We thus conclude that the district court did not abuse its discretion by ordering the expungement of records of N.G.K.'s conviction that are possessed by the judicial branch. See State v. Schultz, 676 N.W.2d 337, 341 (Minn.App.2004) (affirming expungement in light of petitioner's demonstrated difficulties obtaining employment and housing); see also Ambaye, 616 N.W.2d at 261 (affirming denial of expungement where petitioner failed to demonstrate difficulties obtaining employment); H.A., 716 N.W.2d at 364-65 (reversing expungement where petitioner failed to demonstrate difficulties obtaining employment and housing).

II.
The city also argues that the district court erred by ordering offices of the executive branch to seal documents that were "generated as part of judicial proceedings." Whether a court has inherent authority to issue an expungement order affecting the executive branch is a question of law, which is subject to a de novo standard of review. H.A., 716 N.W.2d at 363.
As the city notes, the district court's order in this case was issued after, and appears to be based on, this court's decision in State v. V.A.J., 744 N.W.2d 674 (Minn.App.2008), review denied (Minn. Oct. 1, 2008). In V.A.J., we reversed a district court's denial of a petition to expunge records held by an office of the executive branch. Id. at 678. We reasoned that records maintained by the Bureau of Criminal Apprehension were "within the reach of a district court's expungement order" because they were "judicially created public record[s]." Id. The district court's order in this case tracks the language and holding of V.A.J. by ordering that judicially created records be sealed.
On appeal, the city relies on the more recent supreme court decision in State v. S.L.H., 755 N.W.2d 271 (Minn.2008), which concerned facts that are similar to the facts of V.A.J. and the facts of this case. In S.L.H., the petitioner sought expungement of criminal records to help her achieve her employment goals. Id. at 273. The district court denied the petition with respect to records possessed by executive-branch offices, and the supreme court affirmed that ruling. Id. at 274, 280. In so doing, the supreme court wrote that "`courts must proceed cautiously' when invoking inherent authority," id. at 278 (quoting State v. C.A., 304 N.W.2d 353, 359 (Minn.1981)), particularly "because our separation of powers jurisprudence requires that we give `due consideration' to the `equally important executive and legislative functions,'" id. (quoting In re Clerk of Lyon County Courts' Comp., 308 Minn. 172, 182, 241 N.W.2d 781, 786 (1976)). The supreme court stated that a court's inherent authority "`governs that which is essential to the existence, dignity, and function of a court because it is a court.'" Id. at 275 (quoting C.A., 304 N.W.2d at 358). The supreme court reasoned that "helping individuals achieve employment goals is not `essential to the existence, dignity, and function of a court because it is a court.'" Id. at 277-78 (quoting C.A., 304 N.W.2d at 358). The supreme court further explained that a district court does not have inherent authority to order the expungement of records possessed by executive-branch offices unless the expungement is "`necessary to the performance of the judicial function as contemplated in our state *182 constitution.'" Id. at 275 (quoting In re Clerk of Lyon County Courts' Comp., 308 Minn. at 181, 241 N.W.2d at 786).
Although the supreme court's opinion in S.L.H. appears to take a narrow view of a court's power to order expungement of records held by executive-branch offices, the opinion does not establish a bright-line rule forbidding such orders in all cases. The supreme court cited cases from this court that, the supreme court stated, "stand for the proposition that the judiciary's inherent authority does not extend to records held outside the judicial branch in the absence of a constitutional violation or the abuse of discretion by officials in the other branches of government." S.L.H., 755 N.W.2d at 274 n. 3 (citing Schultz, 676 N.W.2d at 345; State v. T.M.B., 590 N.W.2d 809, 811-13 (Minn.App.1999), review denied (Minn. June 16, 1999)). The supreme court also noted that this court has issued inconsistent rulings in this area. Id. at 274-75 n. 3 (citing State v. P.A.D., 436 N.W.2d 808, 810 (Minn.App.1989), review denied (Minn. May 12, 1989)). But the supreme court refrained from endorsing any particular rule of law, stating, "We need not use this case as a vehicle to comment further on the court of appeals' conflicting rules because, as set forth below, a broad rule is not necessary for the resolution of this case." Id. Three of the six justices participating in S.L.H. expressed a somewhat more expansive view of the scope of the judiciary's inherent authority to expunge records of criminal convictions possessed by the executive branch, but they nonetheless joined in the opinion of the court. See id. at 282 (P.H. Anderson, J., concurring) (citing C.A., 304 N.W.2d at 358).
To resolve this appeal, we must decide whether an expungement order tailored to V.A.J. is consistent with the supreme court's subsequent decision in S.L.H. Although S.L.H. did not mention this court's opinion in V.A.J., it is apparent that the holding of V.A.J. does not survive S.L.H. We held in V.A.J. that a district court order for the expungement of records possessed by executive-branch offices may be justified by the fact that, and to the extent that, the expungement order concerns "judicially created public record[s]." 744 N.W.2d at 678. This court made a distinction between records created by the executive branch and later used in a judicial proceeding, on the one hand, and records created in a judicial proceeding and later obtained and possessed by the executive branch, on the other hand. Id. Such a distinction is not part of the analysis in S.L.H., either in the opinion of the court or in the concurring opinion. Rather, S.L.H. gives the same treatment to all records possessed by the executive branch, regardless whether they were created within that branch or in the judicial branch. We interpret S.L.H. to have defined the court's inherent authority more narrowly than did V.A.J. and, thus, to require reversal of a district court order that is based on V.A.J.[1]
*183 Also, it is significant that N.G.K. seeks to expunge a valid conviction that is still relatively recent. The supreme court consistently has given considerable weight to legislative expressions of policy concerning records of criminal cases. Under the Minnesota Government Data Practices Act, data relating to a person's criminal conviction are classified as public for 15 years following the discharge of the sentence imposed for the conviction. Minn. Stat. § 13.87, subd. 1(b) (Supp. 2007). The conviction of the petitioner in S.L.H. still was classified as public, which prompted the supreme court to say, "we fail to see[] how the legislature's policies could be accommodated if a court were to expunge records held outside the judicial branch that the legislature has classified as public." 755 N.W.2d at 279. The supreme court reasoned that "[t]he expungement of. . . criminal records held outside the judicial branch would effectively override the legislative determination that some of these records be kept open to the public." Id. This deference to a legislative determination that records of criminal convictions should be public, rather than expunged or sealed, is a recurring theme in several supreme court opinions. See id.; In re Quinn, 517 N.W.2d 895, 897-98 (Minn.1994); Barlow, 365 N.W.2d at 234; C.A., 304 N.W.2d at 358-59.
In addition, we observe that, despite seemingly broad language concerning the possibility of expunging records possessed by the executive branch, see, e.g., C.A., 304 N.W.2d at 358, the supreme court has never approved a district court order expunging such records. In most of the cases on point, the district court denied a petition seeking such expungement, and the supreme court affirmed. See S.L.H., 755 N.W.2d at 280; Ambaye, 616 N.W.2d at 261; State v. M.C., 304 N.W.2d 362, 364-65 (Minn.1981); C.A., 304 N.W.2d at 357. In the two cases decided by the supreme court in which the district court ordered expungement of records possessed by an executive-branch office, the supreme court reversed. In re Quinn, 517 N.W.2d at 900; Barlow, 365 N.W.2d at 234-35. The suggestion in dicta in C.A. that a district court may be permitted to expunge records located beyond the judicial branch has not become reality in any subsequent case decided by the supreme court. See S.L.H., 755 N.W.2d at 280; Ambaye, 616 N.W.2d at 261; In re Quinn, 517 N.W.2d at 897-98; Barlow, 365 N.W.2d at 234; M.C., 304 N.W.2d at 364-65.
Thus, in light of the holding and reasoning of S.L.H. and prior supreme court cases, the district court's order directing the city's police department and city attorney's office to seal certain records relating to N.G.K.'s conviction must be reversed. The expungement of records of N.G.K.'s conviction that are possessed by executive-branch offices is not "`essential to the existence, dignity, and function of a court because it is a court,'" S.L.H., 755 N.W.2d at 278 (quoting C.A., 304 N.W.2d at 358), and, thus, not "`necessary to the performance of the judicial function as contemplated in our state constitution,'" id. at 275 (quoting In re Clerk of Lyon County Courts' Comp., 308 Minn. at 181, 241 N.W.2d at 786). N.G.K.'s conviction remains valid, and fewer than 15 years have passed since the discharge of N.G.K.'s sentence, which means that data relating to his conviction presently are classified as *184 public data. See Minn.Stat. § 13.87, subd. 2. There is no allegation of "a constitutional violation or . . . abuse of discretion by officials in the other branches of government." S.L.H., 755 N.W.2d at 274 n. 3. And for the reasons we have explained, reversal is required even to the extent that records possessed by the executive branch were created in the judicial branch.
As stated above, only the City of Crystal appealed from that part of the district court's order in which it granted N.G.K.'s petition. The offices of Hennepin County and the state that were served with the petition did not file a notice of appeal. In this situation, we ordinarily would conclude that the district court's judgment in favor of N.G.K. is final with respect to the offices of Hennepin County and the state that chose not to appeal. See Dailey v. Chermak, 709 N.W.2d 626, 631 (Minn.App. 2006), review denied (Minn. May 16, 2006); Dixon v. Depositors Ins. Co., 619 N.W.2d 752, 755-56 (Minn.App.2000); State Farm Mut. Auto. Ins. Co. v. Spartz, 588 N.W.2d 173, 175 (Minn.App.1999), review denied (Minn. Mar. 30, 1999). But this court previously has held, in this type of case, that a single appellant may raise issues affecting parties to the district court action that did not appeal. In State v. Schultz, 676 N.W.2d 337 (Minn.App.2004), we held that even though a city was the only party that appealed the district court's expungement order, "it would work an injustice" to reverse only as to the city but to leave the district court's judgment intact with respect to other executive-branch entities. Id. at 345. This holding was justified in part by the "intrusion upon the constitutional functions of the executive branch," which "is impermissible under the separation of powers doctrine." Id. (quotation omitted). Thus, in light of Schultz, we reverse the district court's order with respect to each of the affected executive-branch offices.

DECISION
The district court did not clearly err in its findings of fact concerning whether N.G.K. has demonstrated difficulties in securing employment as a result of his 1997 conviction, and the district court did not abuse its discretion by ordering the expungement of records of the conviction that are possessed by the judicial branch. But the district court erred as a matter of law by interpreting the court's inherent authority to permit the expungement of records of the conviction that are possessed by offices of the executive branch.
Affirmed in part, reversed in part.
NOTES
[1] The supreme court denied a petition for further review in V.A.J. after issuing its opinion in S.L.H. The supreme court's denial of a petition for further review in a particular case has no bearing on the precedential value of the court of appeals opinion in that case. A denial of a petition for further review "does not give the court of appeals decision any more or less precedential weight than a court of appeals decision from which no review was sought," Powell v. Anderson, 660 N.W.2d 107, 123 (Minn.2003) (quoting Murphy v. Milbank Mut. Ins. Co., 388 N.W.2d 732, 739 (Minn. 1986)), and "does not provide any confirmation of the correctness of the court of appeals' decision," id. Rather, a denial of a petition for further review by the supreme court "means only that, for one reason or another which is seldom disclosed, and not infrequently for conflicting reasons which may have nothing to do with the merits and certainly may have nothing to do with any view of the merits taken by a majority of the Court, there were not three members of the Court who thought the case should be heard." Id. (quoting Murphy, 388 N.W.2d at 739). Thus, the supreme court did not endorse this court's holding in V.A.J. by denying the petition for further review.