*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1405**

State of Minnesota,
Respondent,

vs.

E. M. L.,
Appellant.

**Filed May 11, 2015
Affirmed
Hooten, Judge**

Crow Wing County District Court
File No. 18-K2-01-002377

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Donald F. Ryan, Crow Wing County Attorney, John Sausen, Assistant County Attorney, Brainerd, Minnesota (for respondent)

Thomas A. Wilson, Wilson Law Firm P.L.L.C., St. Paul, Minnesota (for appellant)

Considered and decided by Stauber, Presiding Judge; Schellhas, Judge; and Hooten, Judge.

**U N P U B L I S H E D   O P I N I O N**

**HOOTEN**, Judge

Appellant petitioned for inherent-authority expungement of his judicial-branch records, primarily in order to get his federal gun rights restored. The district court denied the petition, concluding that the advantages to appellant in granting the expungement

were not commensurate with the disadvantages to the public and the burden on the court. We affirm.

## FACTS

In 2001, appellant E.M.L. was charged with two counts of felony assault and one count of felony malicious punishment of a child after assaulting his seven-year-old son, B.L. The complaint alleged that appellant "grabbed [B.L.], picked him up and then threw him to the ground," causing B.L. to break his wrist. In addition to providing details of the charged incident, the complaint also alleged that the investigating police officer had "learned that [appellant] ha[d] previously kicked [B.L.]" and that "Crow Wing County Social Services [had] previously received a report that [appellant] struck [B.L.] when he was six months old[, which] left bruises on his face."

In early 2002, appellant entered into a plea agreement with the prosecutor, under which the prosecutor agreed to dismiss the two assault counts and appellant agreed to plead guilty to an amended count of gross misdemeanor malicious punishment of a child. *See* Minn. Stat. § 609.377, subd. 2 (2000). At a plea hearing, appellant pleaded guilty consistent with the plea agreement, the district court accepted his plea and adjudicated him guilty, and appellant received a stayed sentence that included two years of probation. Subsequently, appellant was discharged from probation a year early.

In June 2013, appellant filed a petition seeking inherent-authority expungement of his judicial-branch records of the 2002 conviction. In the petition, he gave three reasons for seeking expungement: (1) to facilitate the restoration of his federal gun rights; (2) to prevent employment difficulties; and (3) to allow him to travel to Canada. In support of

2

his petition, appellant submitted affidavits from his wife, B.L., appellant's employers, and other family members and friends. The Minnesota Bureau of Criminal Apprehension (BCA) submitted a standard form letter opposing the petition. The county attorney's office did not submit a letter in support of or in opposition to the petition.

In August 2013, a hearing was held on the petition. The only people in attendance were appellant, his family, and appellant's counsel. The BCA and the county attorney's office waived their appearances. No testimony was taken, but appellant's counsel made an argument to the district court. Counsel acknowledged that, in light of the Minnesota Supreme Court's recent decision in *State v. M.D.T.*, 831 N.W.2d 276 (Minn. 2013), appellant was limited to requesting expungement of judicial-branch records. Counsel stated that "the main reason" that appellant was seeking expungement was because appellant has a federal firearms prohibition as a result of the 2002 conviction. Counsel explained that, while appellant "doesn't have any firearms restrictions in Minnesota," he wants his federal gun rights restored because he "was an avid sport shooter and hunter his whole life before this incident." Counsel argued that the incident underlying the 2002 conviction was "effectively an isolated incident" and that appellant has had no other criminal offenses. He also noted that appellant completed probation early, has fully reconciled with the victim, and is supported in the motion by his entire family.

In September 2013, the district court issued an order denying the petition. On the form order, the district court determined that there was "not clear and convincing evidence that sealing the record would yield a benefit to [appellant] commensurate with the disadvantages to the public and public safety of [sealing the record and] burdening the

3

court to issue, enforce, and monitor an expungement order." But, the district court did not issue a memorandum analyzing the factors that district courts must consider when deciding whether to grant petitions for inherent-authority expungement. *See State v. H.A.*, 716 N.W.2d 360, 364 (Minn. App. 2006). Appellant challenged the denial of his petition. This court reversed and remanded, ordering the district court to "make *H.A.* findings." *State v. E.M.L.*, No. A13-2101 (Minn. App. June 10, 2014) (order op.).

On remand, the district court again denied the petition, this time making *H.A.* findings in an attached memorandum. This appeal followed.

## DECISION

Appellant argues that the district court abused its discretion by denying his expungement petition. "The district court has inherent authority to order expungement of criminal records held in the judicial branch as part of 'the inherent power of the court to control its internal records.'" *State v. A.S.E.*, 835 N.W.2d 513, 517 (Minn. App. 2013) (quoting *M.D.T.*, 831 N.W.2d at 282). "We review a district court's exercise of its inherent authority to expunge criminal records for abuse of discretion." *Id.* "A [district] court abuses its discretion when its decision is based on an erroneous view of the law or is against logic and the facts in the record." *Riley v. State*, 792 N.W.2d 831, 833 (Minn. 2011). We will not set aside a district court's findings of fact unless they are clearly erroneous. *A.S.E.*, 835 N.W.2d at 517. "Clearly erroneous means manifestly contrary to the weight of the evidence or not supported by the evidence as a whole." *H.A.*, 716 N.W.2d at 363 (quotation omitted).

4

"A district court may exercise its inherent expungement authority . . . if expungement will yield a benefit to the petitioner commensurate with the disadvantages to the public from the elimination of the record and the burden on the court in issuing, enforcing and monitoring an expungement order." *A.S.E.*, 835 N.W.2d at 517 (quotation omitted). In deciding whether to grant an inherent-authority expungement, the district court must make findings on each of the following factors:

> (a) the extent that a petitioner has demonstrated difficulties in securing employment or housing as a result of the records sought to be expunged; (b) the seriousness and nature of the offense; (c) the potential risk that the petitioner poses and how this affects the public's right to access the records; (d) any additional offenses or rehabilitative efforts since the offense, and (e) other objective evidence of hardship under the circumstances.

*H.A.*, 716 N.W.2d at 364. In its second order, the district court buttressed its denial of appellant's petition for expungement with *H.A.* findings.

*(a) Employment and housing difficulties*

In his petition, appellant states that he "would like to pursue future employment opportunities without the burden of [his] criminal record." He alleges that, at some unspecified point in time after his 2002 conviction, he "tentatively accepted" a job in Montana. His "potential employer" conducted a criminal background check, and appellant "was required to explain in detail the circumstances surrounding the [2001] incident." Appellant alleges that this experience was "extremely uncomfortable and stressful." He does not allege, however, that the potential employer did not hire him because of the 2002 conviction. He does not allege any other employment difficulties,

past or present, related to his criminal record. Nor does he allege any housing difficulties.

The district court found that this factor weighed in favor of denying the petition. It found that appellant "has demonstrated minimal difficulty in securing employment" and has maintained full-time employment since the 2002 conviction. Regarding the Montana job, the district court found that "it does not appear that [appellant's] criminal record caused [him] to be passed over for the position." Moreover, it found that appellant "has demonstrated no difficulty in securing housing."

Despite a paucity of actual record evidence regarding the Montana job, appellant alleges on appeal that he

> did not ultimately take a lucrative employment position as the result of his criminal record being revealed by a background check during the application process. [Appellant] moved his family to Montana upon initial acceptance of the job[,] and had to move back to Minnesota after it did not work out. This is—by definition—an employment difficulty.

Appellant is intentionally vague as to "whether [he] chose not to take the position because his criminal record was revealed during the background check, or [whether] the employer did not hire [him] because of the same." He admits that he has maintained "gainful" employment with the same employer for 20 years.

We conclude that the district court's findings on this factor are not clearly erroneous. Appellant's lack of candor regarding the circumstances of the Montana job, including the timeframe, cuts against his argument that the district court's findings are erroneous. Moreover, we cannot consider appellant's new evidence on appeal. *See*

6

Minn. R. Civ. App. P. 110.01 ("The documents filed in the trial court, the exhibits, and the transcript of the proceedings, if any, shall constitute the record on appeal in all cases."); *cf. Thiele v. Stich*, 425 N.W.2d 580, 582–83 (Minn. 1988) ("An appellate court may not base its decision on matters outside the record on appeal, and may not consider matters not produced and received in evidence below."). We also note that, on this record, appellant's concern about future employment difficulties is entirely speculative.

*(b) Seriousness of the offense*

The district court found that this factor weighed in favor of denying the petition. It found that "the offense was quite serious and involved a [seven-year-old] child victim. . . . The child suffered a broken wrist, and there was evidence that the child had suffered previous injury at the hands of [appellant]." The district court also noted that the offense was initially charged as a felony.

Appellant argues that the district court improperly relied on *allegations* in the complaint stating that appellant had previously abused B.L. We agree. The record is devoid of any evidence as to whether these allegations of prior injuries were proven, or whether appellant was even charged in connection with them. However, despite this error, we conclude that the district court's overall finding that this factor weighed in favor of denying the petition is not clearly erroneous because appellant committed a violent offense against his young child that resulted in substantial injury. In other words, the district court's findings on this factor are "supported by the evidence as a whole" and are not "manifestly contrary to the weight of the evidence." *See H.A.*, 716 N.W.2d at 363 (quotation omitted).

7

*(c) Risk to the public*

The district court found that this factor weighed in favor of denying the petition. Specifically, it found that,

> given the fact that [appellant] was convicted of committing a violent offense against a child, there is a legitimate public interest in maintaining accurate records of the offense for law enforcement purposes and for purposes of keeping the information available to certain future employers. Specifically, there are certain employment situations where such information would be pertinent, such as child care.

Appellant argues that the district court's findings are "unreasonable" because appellant sought only judicial-branch expungement, not executive-branch expungement, and appellant's executive-branch records would still be publicly available "in the event of expungement." In addition, appellant argues that "there is no evidence in the record indicating [he] has sought, is seeking, or will seek[] an employment position dealing either with children or vulnerable individuals. [Appellant] has worked in the utilities industry with the same employer for 20 years . . . ."

We are not persuaded by appellant's arguments. Some employers may investigate an applicants' judicial-branch records only, but not their executive-branch records, when conducting criminal background checks. Moreover, employers often hire private data collection companies to conduct their criminal background checks, and these companies are required to "delete" any criminal record that has been "expunged." *See* Minn. Stat. § 332.70, subd. 3a (2014). As to appellant's argument about childcare, the district court mentioned employment in the childcare industry as but one example of "employment situations where such information would be pertinent," leaving open the possibility that

8

other types of employers might have a legitimate interest in knowing about appellant's 2002 conviction. We conclude that the district court's findings on this factor are not clearly erroneous.

*(d) Additional offenses or rehabilitative efforts*

The district court found that this factor weighed in favor of granting the petition. It found that appellant has had no new offenses since the 2002 conviction, he completed probation, and he reconciled with the victim. The state concedes that the district court's findings on this factor are "rational." We conclude that the district court's findings on this factor are not clearly erroneous.

*(e) Other objective evidence of hardship*

In his petition, appellant alleges that the expungement of his record will remove the federal firearms prohibition and allow him to possess and use firearms. He also alleges that his travel to Canada is restricted due to the 2002 conviction being on his criminal record.

The district court found that this factor weighed "moderately" in favor of granting the petition. It found that appellant wants to have his federal gun rights restored so that he can hunt and sport shoot again. It also found that appellant wants to travel to Canada, "though [appellant] provided no pressing need for said travel, such as employment or visitation related travel."

Appellant argues that the district court erred by finding that this factor only weighed "moderately" in favor of granting the petition. Appellant alleges that, since his 2002 conviction, he has been unable to own a firearm as a matter of federal law. *See* 18

9

U.S.C. § 922(g)(9) (2012) (prohibiting the possession of a firearm by any person "convicted in any court of a misdemeanor crime of domestic violence"); 18 U.S.C. § 921(a)(33)(A) (2012) (defining "misdemeanor crime of domestic violence"). Appellant alleges that expungement of his judicial-branch records will restore his federal gun rights. *See* 18 U.S.C. § 921(a)(33)(B)(ii) (providing that the federal firearms prohibition contained in section 922(g)(9) does not apply if an otherwise qualifying conviction has been "expunged or set aside"). As to his desire to travel to Canada, appellant generally invokes "the freedom of travel."

Appellant's argument, that expungement of his judicial-branch records—without expungement of his executive-branch records—will restore his federal gun rights, is speculative at best. The federal government's background-check system includes state executive-branch records. *See* NICS Improvement Amendments Act of 2007, Pub. L. No. 110-180, § 102, 121 Stat. 2559, 2564–67 (2008) (describing how state executive-branch records are fed into the national instant criminal background check system). Regardless of whether appellant's judicial-branch records are expunged, the executive-branch records of his charges and conviction will still exist and will likely remain in the database used to enforce section 922(g)(9). *See id.* Appellant has not shown that expungement of his *judicial-branch records* will restore his gun rights under federal law. Moreover, appellant provides no legal authority for his contention that his "freedom to travel" is impinged, and this argument is therefore waived. *State v. Wembley*, 712 N.W.2d 783, 795 (Minn. App. 2006), *aff'd*, 728 N.W.2d 243 (Minn. 2007). Accordingly,

we conclude that the district court's finding that the final *H.A.* factor only weighed "moderately" in favor of granting the petition is not clearly erroneous.[1]

In denying appellant's petition for expungement, the district court carefully weighed each *H.A.* factor. Its decision is not "based on an erroneous view of the law" and is not "against logic and the facts in the record." *See Riley*, 792 N.W.2d at 833. The district court did not abuse its discretion.

**Affirmed.**

---

[1] Appellant also argues that the victim's support of the expungement is a separate factor that weighs in favor of granting the petition, citing Minn. Stat. § 609A.03, subd. 4 (2014). This is incorrect. Appellant sought inherent-authority expungement, not statutory expungement under chapter 609A, and therefore section 609A.03, subd. 4, does not apply here. *See M.D.T.*, 831 N.W.2d at 279 ("There are two bases for expungement of criminal records in Minnesota: Minn. Stat. ch. 609A (2012) and the judiciary's inherent authority.").