*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0224**

State of Minnesota,
Respondent,

vs.

A. D. B.,
Appellant.

**Filed November 23, 2015
Affirmed
Kirk, Judge**

Hennepin County District Court
File No. 27-CR-07-127152

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Elizabeth R. Johnston, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

A.D.B., Minneapolis, Minnesota (pro se appellant)

Considered and decided by Kirk, Presiding Judge; Johnson, Judge; and Bjorkman, Judge.

**U N P U B L I S H E D   O P I N I O N**

**KIRK**, Judge

Appellant A.D.B. appeals the district court's denial of his petition for inherent-authority expungement of his judicial criminal records, arguing that the record demonstrates

his rehabilitative efforts, his continued housing and employment difficulties, and that the Hennepin County Attorney's Office does not object to expungement of the records. The district court denied his petition, concluding that appellant did not prove by clear and convincing evidence that the benefits to appellant in granting the expungement were commensurate with the disadvantages to the public and the burden on the court. We affirm.

## FACTS

In 2007, respondent State of Minnesota charged appellant with seven counts of felony theft by swindle over $35,000 and one count of felony racketeering arising from his participation in a mortgage-loan-fraud scheme in North Minneapolis. The probable-cause section of the complaint alleged that appellant acted as a broker for Universal Mortgage, a residential mortgage originator, and submitted loan applications with false information in order to receive financial kickbacks. Brokers would locate straw buyers, who would submit mortgage-loan applications falsely stating the straw buyer's employment, assets, and liabilities in order to purchase homes at inflated prices. In return, appellant received financial windfalls for the sale of four homes that he owned in the amounts of $53,100, $17,000, $20,000, and $25,000, totaling $115,100.

Pursuant to a plea agreement, appellant pleaded guilty to four counts of felony theft by swindle over $35,000 with a sentence of up to 24 months. Appellant also signed an intent-to-proffer agreement stating that he would provide a truthful and detailed account of his involvement in the scheme and that the plea agreement was contingent upon him providing a truthful statement and his continued cooperation. The Hennepin County Attorney's Office also agreed that it would not oppose any future expungement petition

filed by appellant, provided that five years had elapsed following appellant's sentencing, he successfully completed his prison term and supervised release, and that he did not commit any further offenses. The intent-to-proffer agreement was signed by appellant, defense counsel, and the prosecutor. The district court sentenced appellant to 21 months for the first count of felony theft by swindle over $35,000, and 24 months on the remaining charges, to be served concurrently, for a total of 24 months.

In February 2010, appellant was released from prison. In September 2013, he filed a pro se petition to expunge his criminal record. The district court denied his petition. Less than nine months later, in August 2014, appellant filed a second petition to expunge his criminal record with assistance of counsel. In support of his petition, appellant's attorney asserted that appellant had received his degree in business management from the University of Phoenix and also had completed the Men's Transitional Program at My Home, Inc. Appellant also included copies of numerous job applications that he had submitted and a letter from the prosecutor expressing his strong support for appellant's petition.

On October 30, a district court referee heard appellant's second petition to expunge his criminal record. Appellant appeared and was represented by counsel. The Hennepin County Attorney's Office did not object to appellant's petition. The Bureau of Criminal Apprehension (BCA) sent a letter to the district court objecting to any expungement of appellant's records with the BCA. At the hearing, appellant testified that his criminal background was inhibiting his ability to improve his housing situation and secure employment consistent with his education and experience. The prosecutor appeared and testified on appellant's behalf. The prosecutor testified that appellant got caught up in the

real estate market bubble and was lured into the mortgage-loan-fraud scheme because he did not fully appreciate or "didn't understand the criminality of what he had done." The prosecutor testified that he believed that appellant's remorse and rehabilitation were genuine and that it was not in the public's interest to maintain his felony criminal record.

In a detailed 20-page order and memorandum, the referee denied appellant's petition. The district court approved the referee's order. The district court concluded that, while appellant was suffering from housing and employment difficulties, the seriousness of his offense, the public's interest in knowing about appellant's criminal past, and his lack of remorse and rehabilitation weighed against granting his expungement petition.

This appeal follows.

**D E C I S I O N**

We review a district court's exercise of its inherent authority to expunge judicial-branch records, a matter of equity, for an abuse of discretion. *State v. N.G.K.*, 770 N.W.2d 177, 180 (Minn. App. 2009). The district court's findings of fact will be set aside only if they are clearly erroneous. *Id.* "Clearly erroneous means manifestly contrary to the weight of the evidence or not supported by the evidence as a whole." *State v. H.A.*, 716 N.W.2d 360, 363 (Minn. App. 2006) (quotation omitted). "The findings of a referee, to the extent adopted by the court, shall be considered as the findings of the court." Minn. R. Civ. P. 52.01.

When deciding whether to grant an inherent-authority expungement, the district court must make findings on the following factors:

4

(a) [T]he extent that a petitioner has demonstrated difficulties in securing employment or housing as a result of the records sought to be expunged; (b) the seriousness and nature of the offense; (c) the potential risk that the petitioner poses and how this affects the public's right to access the records; (d) any additional offenses or rehabilitative efforts since the offense; and (e) other objective evidence of hardship under the circumstances.

*H.A.*, 716 N.W.2d at 364.

*(a)   Employment and housing difficulties*

In his brief, appellant alleges that he is currently living in substandard housing in North Minneapolis and that he was denied public housing through the St. Louis Park Housing Authority because of his criminal background.  Appellant also contends that, despite submitting multiple applications, his criminal record precludes him from securing a better job that is more in-line with his education and training.

The district court found that this factor weighed in favor of denying the petition.  It noted that appellant's employment and housing situation were unchanged since his first petition, as appellant lives in his childhood home in North Minneapolis and is employed fulltime as a receptionist.  The district court concluded that "[w]hile there is some level of hardship due to [appellant] not achieving his employment or housing goals, this is not acutely affecting his survival."

We conclude that the district court's findings on this factor are not clearly erroneous. *See H.A.*, 716 N.W.2d at 364 (finding that this factor did not weigh in favor of expungement because petitioner "did not indicate a history of unsuccessful employment attempts" and he "owns his own home").  The record reflects that the St. Louis Park Housing Authority

5

rejected appellant's application on several grounds, including unverifiable housing history, excessive negative credit accounts, and his past criminal history of incarceration for theft by swindle. Hence, appellant's criminal history was not the sole decisive factor in the denial of his public-housing application. While appellant demonstrated a history of unsuccessful employment applications for a variety of jobs, he currently has a fulltime job. *Id.* Taking the weight of the evidence as a whole, the district court did not err in concluding that this factor weighed against expungement. *Id.* at 363.

(b)     *Seriousness of the offense*

Appellant argues that the district court erred by overstating his involvement in the mortgage-loan-fraud scheme. He contends that, unlike his codefendants who were convicted for their participation in the scheme at Universal Mortgage, he only worked for the business for two months, he never pocketed any of the financial kickbacks, and that his sentence was comparatively lighter than what his codefendants received.

A district court's findings on a factor must be "supported by the evidence as a whole" and cannot be "manifestly contrary to the weight of the evidence." *H.A.*, 716 N.W.2d at 363.

The district court concluded that this factor weighed in favor of denying appellant's petition. It found that appellant was involved in "a very serious set of offenses," and that he pleaded guilty to four counts of felony theft by swindle over $35,000, which is a major economic offense. *See* Minn. Sent. Guidelines II.D.2(b)(4) (2005). While appellant's criminal involvement was limited to a two-month period in April and May of 2006, the district court found that appellant received financial kickbacks totaling $115,100 and that he

6

served time in prison, unlike two of his codefendants who each received a probation disposition.[1]

The record supports the district court's findings. Felony theft by swindle over $35,000 is assigned a severity level 6, and appellant's four convictions meant that, even with a criminal history score of zero, his presumptive sentence was an executed prison sentence of 54 months. Minn. Sent. Guidelines IV, V (Supp. 2005). Whether appellant kept the profits for personal gain is irrelevant as the facts show that as the seller of the four properties, he pocketed the monies. Appellant, along with three other brokers and the owner of Universal Mortgage, was convicted for his participation in the scheme. Even after receiving a downward dispositional departure sentence of 24 months, appellant received a stiffer sentence than two of his codefendants.

*(c)    Risk to the public*

Appellant argues that the public does not need to access his criminal records because the state and the district court agreed at sentencing not to object to any future expungement petitions.

The district court found that this factor weighed against appellant's petition for several reasons. It concluded that, based on the inherent power of the courts, "a prosecutor's advance agreement not to object to a petition for expungement cannot prevent or excuse a court from making the balancing assessment required in the proper exercise of its judicial function." The district court concluded that the prosecutor's recommendation

---

[1] The district court erroneously found that appellant received financial kickbacks totaling $115,000, but the record reflects the total as $115,100.

did not overcome the public's interest in access to the records. It contextualized the prosecutor's current support of appellant's petition by referring back to the 2008 plea negotiations where the prosecutor not only charged appellant with eight felony counts relating to his involvement in the mortgage-loan-fraud scheme, but also required him to serve prison time per the conditions of the plea deal. The district court did not find credible appellant's testimony that he was unaware of the illegality of his conduct when he was charged. It pointed out that appellant admitted to the requisite criminal intent at the plea hearing, and that the prosecutor had to believe that appellant intended to defraud in order to charge him with the offenses.

The district court also pointed out that there was a presumption that judicial proceedings and its records are open to the public, and noted that employers and landlords have a legal duty to investigate potential employees and tenants. Notably, appellant applied to jobs that would have given him access to the persons and property of individuals. The district court also mentioned that recent legislative changes to Minnesota Statutes Chapter 609A indicate a policy shift towards expungement for specific criminal offenses, but the legislature chose not to include felony theft by swindle as one of the eligible crimes for expungement under the amendments. *See* Minn. Stat. § 609A.02, subd. 3(b) (2014); 2014 Minn. Laws, ch. 246, § 6 (effective Jan. 1, 2015).

We conclude that the district court did not err in its findings on this factor. The Hennepin County Attorney's Office does not have the power to bind the judicial branch in exercising its inherent power over judicial records. *See State v. M.D.T.*, 831 N.W.2d 276, 281 (Minn. 2013) (stating that the judicial branch's inherent authority includes the criminal

8

expungement of records when it is necessary to the performance of judicial functions). Despite the respect and high regard that the prosecutor holds within the legal community, the district court acted within its discretion in weighing his testimony, as well as appellant's testimony. "Assessing the credibility of witnesses and weighing their testimony are within the exclusive province of the factfinder, and the factfinder is free to accept part and reject part of a witness's testimony." *State v. Engle*, 731 N.W.2d 852, 859-60 (Minn. App. 2007) (quotation omitted). Finally, felony theft by swindle is not an offense eligible for statutory expungement under the recent amendments, and it would be unreasonable for this court to make an exception for appellant in light of the legislature's clear mandate on this matter. *See* Minn. Stat. § 609A.02, subd. 3(b) (Supp. 2015).

(d)     *Additional offense or rehabilitative efforts*

Appellant argues that the district court was biased against him when it found that his present expressions of remorse and rehabilitation lack credibility.

The district court did not err when it found that this factor weighed in favor of denying appellant's petition. First, many of appellant's arguments relate to the district court's characterization of his lack of remorse at his first expungement petition hearing, which is not within the scope of this appeal. Relevant to this appeal, the district court found appellant's testimony at the hearing on the second petition to be more practiced and coached, but "his underlying demeanor and attitude were little changed." The district court found appellant's remorse to lack sincerity because "he fought the case until at the verge of trial[, and] he accepted a shorter prison sentence to avoid the risk of a much longer prison

sentence." We defer to the factfinder's credibility determinations. *See Engle*, 731 N.W.2d at 859-60. Appellant provides no evidence to support his claim of bias.

There is evidence demonstrating appellant's rehabilitation efforts. A review of appellant's criminal record background shows that he has committed no crimes since 2008, he completed the Men's Transitional Program at My Home, Inc., and that he earned his college degree. But, again, examining the weight of the evidence as a whole, the district court did not clearly err in its findings on this factor. *H.A.*, 716 N.W.2d at 363.

*(e)     Other evidence of hardship*

Appellant does not argue any other evidence of hardship, and the district court found none.

On this record, we hold that the district court did not abuse its discretion in refusing to expunge appellant's judicial criminal records under its inherent power.

**Affirmed.**